1  STUART F. DELERY
   Acting Assistant Attorney General
2  ANTHONY J. COPPOLINO
3  Deputy Branch Director
   BRYAN R. DIEDERICH (MA Bar. No. 647632)
4  United States Department of Justice
5  Civil Division
   20 Massachusetts Ave, NW
6  Washington, D.C.  20004
7  Tel: (202) 305-0198; Fax: (202) 616-8202
8  Bryan.Diederich@usdoj.gov
   *Counsel for the Defendants*
9

10            **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

12 NATIONAL COALITION FOR MEN     )
   and JAMES LESMEISTER,          )
13 Individually and on behalf of others  )
14 similarly situated,            )   Case No.:  CV13-02391-DSF(MANx)
                                  )
15        PLAINTIFFS,             )   Hearing Date:  July 29, 2013
16        vs.                     )
                                  )   MEMORANDUM IN SUPPORT OF
17 SELECTIVE SERVICE SYSTEM;      )   DEFENDANTS' MOTION TO
18 LAWRENCE G. ROMO, as Director of )  DISMISS PURSUANT TO FEDERAL
   SELECTIVE SERVICE SYSTEM; and  )   RULE OF CIVIL PROCEDURE
19 DOES 1 through 10, Inclusive,  )   12(B)(1), 12(B)(3), & 12(B)(6)
                                  )
20        DEFENDANTS.             )
21 _____)

22                    **INTRODUCTION**

23        This case—a facial challenge to the thirty-three-year-old Military Selective

24 Service Act's requirement that males, but not females, register with the Selective

25 Service System—is brought by the wrong plaintiffs, in the wrong court, at the

26

27 wrong time.  As set forth further below, none of the Plaintiffs have standing to

28 challenge the Act's constitutionality.  In addition, venue is lacking in this district

   Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-
   02391-DSF(MANx)

because none of the Plaintiffs, the Defendants, or the events at issue in the case have any particular connection to the Central District of California.  Third, even if they had standing and this Court were the proper venue, Plaintiffs' claims are unripe because the policy change that forms the basis of their challenge remains in the process of being implemented and is not yet fully in place.  Finally, assuming those threshold defenses are insufficient, Plaintiffs fail to state a claim upon which relief can be granted because the law requires deference to the military and Congress in enacting changes in military policies, including the Selective Service registration system.

## BACKGROUND

### I.   THE MILITARY SELECTIVE SERVICE ACT & THE ROLE OF WOMEN IN THE MILITARY.

The United States Constitution empowers Congress to "raise and support Armies."  U.S. Const. pmbl.; art I., § 8.  Encompassed in the power to raise an army is the power to draft and induct citizens into that army.  *See Selective Draft Law Cases*, 245 U.S. 366, 381-82 (1918).  In 1980, President Carter asked for, and Congress to provided, funds to reinstate Selective Service registration in order to "meet … future mobilization needs rapidly if they arise."  *See* Committee on Armed Services, 96th Cong., Presidential Recommendations for Selective Service Reform 7 (Comm. Print. 1980) (hereinafter "Presidential Recommendations"); Joint Resolution, Pub. L. 96-282, 94 Stat. 552, 552 (1980).

The rationale for requiring registration despite the fact that there is no active

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-2-

draft is to provide a ready pool of potential inductees should an urgent need for a draft arise. *See Rostker v. Goldberg*, 453 U.S. 57, 60 (1981). Consequently, the Military Selective Service Act ("MSSA") provides that, with few exceptions, all men between the ages of eighteen and twenty-six must register with the Selective Service in the manner proscribed by the President and regulations of the Selective Service. *See* 50 U.S.C. app. § 453(a).

### A.     Registration with the Selective Service.

Registration can be accomplished by in a variety of ways. The registrant is required to provide no more than his "name, date of birth, sex, Social Security Account Number (SSAN), current mailing address, permanent residence, telephone number, date signed, and signature, if requested …." 32 C.F.R. § 1615.4(a). The estimated time to fill out the form is less than two minutes. *See* 73 Fed. Reg. 50391 (Aug. 26, 2008). As Plaintiffs allege, most everyone complies with the registration requirements. *See* Compl. ¶ 11. Failure to register when required, on the other hand, can have consequences, including criminal liability or bans on federal employment or student aid. *See* 50 U.S.C. app. § 462(a); 5 U.S.C. § 3328; 4 C.F.R. § 668.37.

### B.     *Rostker*:  The Supreme Court Deems Male-Only Registration Constitutional.

At the time that Congress appropriated the funds to reinstitute the registration requirement, there was debate about whether to require women to register along with men. President Carter recommended that "women as well as

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-3-**

men should be subject by law to registration, induction and training for service in the Armed Forces."  Presidential Recommendations at 23.  Subsequently, the Senate Armed Services Committee considered, and ultimately rejected, a proposal to require women to register.  *See* Department of Defense Authorization for Appropriations for Fiscal Year 1981:  Hearings on S. 2294 before the Senate Committee on Armed Services, 96th Cong., 2d Sess., 1655-1739 (1980); S. Rep. No. 96-826, at 156-61 (1980).

In rejecting the proposal, the Committee wrote that "[c]urrent law and policy exclude women from being assigned to combat in our military forces, and the committee reaffirms this policy.  The policy precluding the use of women in combat is, in the committee's view, the most important reason for not including women in a registration system."  S. Rep. No. 96-826, at 157.  The committee adopted specific findings, including that, if a draft were instituted, "the primary manpower need would be for combat replacements," which could not include women.  *Id.* at 160.  Ultimately, the committee concluded, "the arguments for treating men and women equally—so compelling in many areas of our national life—simply cannot overcome the judgment of our military leaders and of the Congress itself that a male-only system best serves our national security."  *Id.* at 159.  The conference committee that considered the legislation endorsed the Specific Findings in the Senate Armed Services Committee Report.  *See* S. Rep. No. 96-895, at 100 (1980) (Conf. Rep.).  The findings were then adopted by both

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-4-

1  houses of Congress. *See Rostker*, 453 U.S. at 74. Given this explicit adoption of

2  the findings of the Senate Armed Services Committee, the Supreme Court

3  concluded that its findings were "in effect the findings of the entire Congress." *Id.*

4

5  Following Congress's findings, the Court in *Rostker* acknowledged that,

6  "[t]he purpose of registration … was to prepare for a draft *of combat troops*." *Id.*

7  at 76. Because women were excluded from combat positions by dint of both

8  statute and executive policy, the Court reasoned, Congress reasonably concluded

9  that women would not be needed in a draft and therefore need not register. *See id.*

10  "Men and women," the Court wrote, "because of the combat restrictions on

11  women, are simply not similarly situated for purposes of a draft or registration for

12

13  a draft." *Id.* at 79. In reaching this conclusion, the Court emphasized that, while it

14  could not "abdicate [its] ultimate responsibility to decide the constitutional

15  question," it must be careful "not to substitute [its] judgment of what is desirable

16  for that of Congress, or [its] own evaluation evidence for a reasonable evaluation

17  by the Legislative Branch." *Id.* Accordingly, the Court emphasized that it must

18

19  defer to Congress' military judgments, noting that, "[n]ot only is the scope of

20  Congress' constitutional power in this area broad, but the lack of competence on

21  the part of the courts is marked." *Id.* at 65.

22

23  ### C.  The Evolving Role of Women in the United States Military.

24  The core of Plaintiffs' position appears to be that, because Congress and the

25  Executive have increasingly adopted the military judgment that there is a place for

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-5-**

women in combat roles, they must also amend their military judgment about draft needs (even before the military has implemented policy changes regarding women in combat roles).  While the parties can agree that the role of women in the military has changed and continues to change, Plaintiffs' conclusion—that Selective Service policy must immediately be declared unconstitutional—does not follow.

The restrictions on women in combat have eased over time.  In 1993, Congress repealed statutory prohibitions on women in combat aircraft and ships. In 1994, the Secretary of Defense issued the "Direct Ground Combat Definition and Assignment Rule," which opened some units previously closed to women.  *See* Office of the Undersecretary of Defense for Personnel and Readiness, Report to Congress on the Review of Laws, Policies & Regulations Restricting the Service of Female Members in the United States Armed Forces 17-18 (2012) (hereinafter "2012 Report") (Ex. A at 23-24).  In February 2012, the Undersecretary of Defense for Personnel and Readiness reported to Congress that the military intended to modify the 1994 policy, opening approximately 14,000 positions in the military to women.  *See* 2012 Report at 19-22 (Ex. A at 25-28).

Most recently, on January 24, 2013, the Secretary of Defense and the Chairman of the Joint Chiefs of Staff announced that the 1994 policy was rescinded and that the United States military would begin opening additional positions to women.  *See* Memorandum for Secretaries of the Military Departments, Jan 24. 2013 (Ex. B).  The attachment to that memorandum provides

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-6-**

1   that it may take until September 2015 for the services to develop occupational

2   standards for units currently closed to women.  *See id.*  Complete implementation

3   of the changes may take until 2016.  *See id.*

4

5        Implementation of changes will be closely monitored by Congress.  Each

6   time a type of unit or position is opened to women, the Secretary of Defense must

7   report to Congress, providing a justification for opening the position.  *See* 10

8   U.S.C. § 652(a)(3)(A).  Mindful of the connection between the composition of the

9   military and the Selective Service, the law also requires that the Secretary of

10  Defense accompany each report with, "a detailed analysis of the proposed change

11  with respect to the constitutionality of the [MSSA] … to males only."  *Id.* §

12  652(a)(3)(B).

## II.   PLAINTIFFS' CHALLENGE.

        Plaintiffs ask this Court to force the government to implement changes to the

Selective Service system midstream, while implementation of the women-in-

combat policy is still ongoing and before Congress has even had the opportunity to

see how the military intends to implement the recent policy change.  Both

Lesmeister and NCFM allege that the male-only registration requirement violates

the Fifth Amendment of the Constitution (Count I), the Fourteenth Amendment of

the Constitution (Count II) and "28 U.S.C. § 1983" (Count III).  They specifically

request from this Court "injunctive and declaratory relief for Defendants to treat

women and men equally by requiring both women and men to register for the U.S.

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-7-

1  military draft."  Compl. at 1.

2  **ARGUMENT**

3  For several reasons set forth below, the Court should dismiss this case at the
4
5  threshold.  First, neither Plaintiffs Lesmeister nor NCFM have standing to bring
6  this claim, which, in any event, is not yet ripe for judicial consideration.  In
7
8  addition, there is no reason for this suit—brought by a Plaintiff from Texas and a
9  corporation that appears to have its base of operations in  San Diego against an
10  federal agency located in the Washington, D.C. area—to be heard in the Central
11
12  District of California.  Even if Plaintiffs could overcome these substantial
13  procedural barriers to proceeding, their claims must be dismissed for failure to
14
15  state a claim.  Two of Plaintiffs' three counts concern laws directed to state
16  officials, not the federal government.  The remaining count—that the current
17  Selective Service registration process violates the Fifth Amendment—must be
18
19  dismissed because the Court cannot grant relief on the claim without abridging a
20  long tradition of deference to the judgment of Congress and the military as they
21  proceed to implement changes to the role of women in combat and consider its
22
23  impact, if any, on Selective Service registration.  In the meantime, the district court
24  cannot disregard binding Supreme Court precedent.

25  **I.  THE COURT SHOULD DISMISS THE CASE BECAUSE NEITHER
26      PLAINTIFF HAS STANDING.**

27  In order to invoke the Court's jurisdiction, both Plaintiffs Lesmeister and
28  NCFM "must satisfy the threshold requirement imposed by Article III of the

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Part-and-parcel of the Article III threshold showing of jurisdiction is a showing that the plaintiff has standing to sue. *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To satisfy Article III's standing requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). A plaintiff cannot satisfy these standards by merely reciting "a bare legal conclusion." *See Maya*, 658 F.3d at 1068. The standing inquiry is particularly rigorous where, as here, a court is asked to find the actions of the other branches of government unconstitutional. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citing *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997)). As demonstrated below, aside from boilerplate assertions that this Court has jurisdiction and that a case or controversy exists, *see* Compl. ¶¶ 2, 24, the Complaint is bereft of any allegation that would demonstrate that either Lesmeister or NCFM has standing to invoke this Court's jurisdiction to strike down regulations promulgated pursuant to Congress's statute.

### A.    James Lesmeister Has Suffered No Injury That Can Be Redressed by This Court.

Plaintiff Lesmeister has failed to establish standing for two reasons: he has

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-9-

failed to allege an injury-in-fact, and he has failed to provide even a threadbare allegation that the relief he seeks would redress an injury (if he were actually injured).

Lesmeister fails to even allege that he has been injured by the United States' current Selective Service policies. There is but a single paragraph about Lesmeister in the Complaint, and it does not allege that Lesmeister has suffered any injury at all, let alone a concrete personal injury linked to the change in military policy on women in combat announced in January 2013. *See* Compl. ¶ 10.

Nor is there any possibility that he can demonstrate any concrete harm cognizable under Article III. Because Lesmeister has registered with Selective Service, he is not subject to any action to enforce the requirements of the MSSA. *See, e.g.*, *Selective Service Sys. v. Minnesota Public Interest Research Group*, 468 U.S. 841, 853 (1984) (noting that non-registrant becomes eligible for student aid as soon as he registers). Nor can he credibly argue that the prospect of being drafted constitutes a concrete harm. Whether there would ever be a war that would prompt Congress to reinstate draft procedures is entirely speculative and therefore cannot support standing. *See Clapper*, 133 S. Ct. at 1142.

Even had Lesmeister adequately pled an injury, he would still lack standing because the Court could not redress the injury by taking the action that he proposes. According to the Complaint, Lesmeister seeks "injunctive and declaratory relief for Defendants to treat women and men equally by requiring both

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-10-

women and men to register for the U.S. military draft."  Compl. at 1.  If the Court ordered that relief, Lesmeister would remain in precisely the same position as he does today.  Because he neither bears the burden of registering any longer nor faces any risk of negative consequences for non-registration, registering women would do nothing to remove any burden from him.  Thus, the request for injunctive relief will have no effect on Lesmeister's status with the Selective Service.  On the one hand, if registration for everyone is cancelled going forward, it will have no effect because Lesmeister is already registered.  On the other hand, if women are required to register as well as men, Lesmeister's position is not altered either, as he would remain registered.

Ultimately, the mere desire that the government adopt policies consistent with Lesmeister's view of the Constitution is not sufficient to confer standing under Article III.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court.").[1]  Article III does not create "publicly funded forums for the ventilation of public grievances," *see Valley Forge*, 454 U.S. at 473, nor are the federal courts an

---

[1] Lesmeister cannot rely on the line of cases cited in *Allen* concerning "stigmatic" injuries.  Not only does the Complaint not allege a stigmatic injury, but stigmatic injury cases rely on the proposition that a "disfavored group" can be injured by the stigma that they are "innately inferior."  *See Heckler v. Matthews*, 465 U.S. 728, 739-40 (1984).  No such alleged injury is implicated here.

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-11-

appropriate forum for Plaintiffs to use to merely obtain policy changes they prefer.

*See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 106-07 (1998) (plaintiff

lacks standing based on "'undifferentiated public interest' in faithful execution of

[a statute]") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1998).  As

explained in more detail below, the appropriate forum for debating the future of the

Selective Service is in Congress.  Lesmeister lacks standing to turn that policy

debate into a justiciable case for this Court.

### B.    NCFM Cannot Show Associational Standing.

Like Lesmeister, Plaintiff NCFM has failed to plead the facts necessary to

support its claim for standing.  NCFM attempts to invoke "organizational

standing" on behalf of its members.  *See* Compl. ¶ 9.  In order to invoke standing

on behalf of its members, NCFM must show that "(a) its members would otherwise

have standing to sue in their own right; (b) the interests it seeks to protect are

germane to the organization's purpose; and (c) neither the claim asserted nor the

relief requested requires the participation of individual members in the lawsuit."

*Associated Gen. Contractors of Am. v. California Dept. of Transp.*, 713 F.3d 1187,

1194 (9th Cir. 2013).  NCFM merely recites the legal conclusion that it meets these

standards while providing virtually no details to show that its claim is even

plausible.  *See* Compl. ¶ 9.  NCFM states that many of its members are males who

are or will be between eighteen and twenty-five, *see id.*, but alleges no further facts

to suggest that they are harmed by, or even subject to, the registration requirement.

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-12-**

The MSSA exempts from registration certain non-citizens, members of the military, students at certain military academies, and certain members of the military reserves from the registration requirement. *See* 50 U.S.C. app. §§ 453(a), 456(a)(1).  Aside from asserting that some members of NCFM are males who are of registration age, the Complaint provides no allegation that would allow the Court to discern whether these members of NCFM are, for example, United States citizens, members of military, or students at military academies.  Accordingly, NCFC has failed to plead facts sufficient to show that "its members would have standing to sue in their own right." *See Associated Gen. Contractors*, 714 F.3d at 1194-95.

More fundamentally, NCFM's bid for organizational standing fails because it has not identified a single individual member who has standing.  In order to establish organizational standing, the Supreme Court has "required plaintiff-organizations to make *specific allegations establishing that at least one identified member had suffered or would suffer harm.*" *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009) (emphasis added).  This task, which should not be difficult where an organization claims that many of its members are injured, is necessary to assist the Court in fulfilling its independent obligation to assure that standing exists.  *See* 555 U.S. at 499-500.  NCFM's complete failure to provide allegations of this nature—let alone factual support—is fatal to its attempt to invoke the Court's jurisdiction.  *See Associated Gen. Contractors*, 713 F.3d at

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-13-

1195 (general allegations in unverified complaint failed to establish standing).

## II.   THE COURT SHOULD DISMISS THE CASE BECAUSE IT HAS BEEN BROUGHT IN THE WRONG VENUE.

The flaws in Plaintiffs' Complain extend beyond the failure to adequately allege personal injury.  Their case should also be dismissed because it has been brought to the wrong venue.  NCFM and Lesmeister invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1331.[2]  Plaintiffs cite the wrong provision of the venue statute, 28 U.S.C. § 1391(b), and then cursorily repeat text of the statute to assert that venue is proper in this Court.  In fact, venue in actions against a federal defendant is governed by 28 U.S.C. § 1391(e).  There are three potential venues for such a suit:  "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred … or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(d)(1).  None of these tests points to this district.

Both the federal defendants and the events at issue in the Complaint occurred far away from the Central District of California.  The federal defendants are deemed to reside where they perform their official duties—Washington, D.C.

_____

[2] They also wrongly assert that the Court has jurisdiction pursuant to 28 U.S.C. § 1343(3) & (4).  *See* Compl. § 2b.  Section 1343(3) concerns the deprivation of rights "under color of *State* law, statute, ordinance, regulation, custom or usage."  There are no allegations in the Complaint about actions under color of state law.  Section 1343(4) concerns actions under Federal civil rights statutes.  As explained below, like 28 U.S.C. § 1343(3), the only statute Plaintiffs invoke concerns the actions of state governments and officials and is, therefore, inapplicable in this action.

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-14-

or Northern Virginia.  *See, e.g.*, *Rangel v. Holder*, No. CV 10-00129 DDP

(FMOx), 2012 WL 1164080, *1 (C.D. Cal. Apr. 9, 2012); *Zhang v. Chertoff*, No. C

08-02589 JW, 2008 WL 5271995 *3 (N.D. Cal. Dec. 15, 2008) ("Federal

defendants are generally deemed to reside in the District of Columbia").  Further,

none of the events described in the Complaint occurred in the Central District of

California—the laws and regulations concerning the Selective Service System

were promulgated and are administered from Washington, D.C. (Compl. ¶¶ 17-18)

and the decision with respect to women in combat occurred in Washington, D.C.

(Compl ¶¶ 19-22).  Accordingly, neither NCFM nor Lesmeister can rely on 28

U.S.C. § 1391(d)(1)(A) or (B) as vesting venue in this judicial district.

Nor have NCFM or Lesmeister pled facts sufficient to show that they reside

in this district for purposes of 28 U.S.C. § 1391(d)(1)(C).  Lesmeister admits that

he lives in Texas.  *See* Compl. ¶ 10.  NCFM does not bother to make any

allegations as to where it is based, beyond asserting that it is a "501(c)(3)

educational and civil rights corporation organized under the laws of the State of

California," and that it is "registered with the Combined Federal Campaign for

non-profit organizations."  Compl. ¶ 5-6.  A search of public records and

information indicates that NCFM has no apparent connection to the Central

District of California.  For example, a search of the Internal Revenue Service's

publicly available records of registered 501(c)(3) organizations reveals that there is

an organization called the Coalition of Free Men Inc. doing business as "National

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-15-

Coalition for Men NCFM." *See* Request for Judicial Notice Ex. A.  The mailing address and address for the principal officer of the organization are in San Diego, California. *See id.*  The same address and principal officer are identified on what appears to be NCFM's website. *See* www.ncfm.com.   A search of the California Secretary of State's corporations database returns no result for "National Coalition for Men" or "NCFM," but does return an entity called the Coalition of Free Men that lists the same San Diego address as the address for its registered agent. *See* Request for Judicial Notice Ex. B.  The California Secretary of State database reveals that Coalition of Free Men is a *New York* corporation registered in California.  A further search of the New York Secretary of States database reveals that there is, indeed, a corporation called the Coalition of Free Men, Inc., listing an address on Manhattan's Upper East Side. *See* Request for Judicial Notice Ex. C. The National Coalition for Men apparently has a Los Angeles *chapter*, but that appears to be a separate entity, as it has filed documents in legal proceedings as "National Coalition of Free Men, Los Angeles Chapter." *See* Amicus Curiae Br. and Pet. to File Amicus Curiae Br. by Nat'l Coalition of Free Men, Los Angeles Chapter, *Angelucci v. Century Supper Club*, No. S136154, 2006 WL 5164105 (Cal. Ct. App. May 8, 2006).

   As a general matter, a corporation like NCFM is deemed to reside in its principal place of business, which is usually where it is headquartered. *See* 28 U.S.C. § 1391(c)(2); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (for

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-16-

1    diversity jurisdiction purposes, principal place of business is usually headquarters*)*;

2    *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 940 (C.D.

3

4    Cal. 2011).  There are no allegations that would support the conclusion that NCFM

5    is headquartered in the Central District of California and available public

6

7    information described above suggests that it is not.  Accordingly, Plaintiffs'

8    complaint fails to demonstrate that venue is proper in this Court, and should be

9    dismissed.  *See* 28 U.S.C. § 1406(a) (court may dismiss for improper venue).

10

11   **III.    THE COURT SHOULD DISMISS THE CASE BECAUSE IT IS NOT
          YET RIPE.**

12          Alternatively, the Court should dismiss the case as unripe because Plaintiffs'

13

14   theory rests entirely on the anticipated impact of policies that have not yet been

15   implemented.  A claim is not ripe for adjudication if it rests upon 'contingent

16   future events that may not occur as anticipated....'"  *Texas v. U.S.*, 523 U.S. 296,

17

18   300 (1998) (internal quotations omitted).  As explained above, the new military

19   policy concerning the role of women in combat will be implemented over the next

20   three years and, moreover, Congress has yet to consider the impact of those

21

22   forthcoming changes on the Selective Service registration system.  The *Rostker*

23   Court concluded that men and women were not similarly situated for purposes of a

24   future draft in 1979.  *See Rostker*, 453 U.S. at 79.  But a full picture of the facts

25

26   and policies that might bear on that question in 2013 and beyond are simply not yet

27   known.  In these circumstances, where policy has just begun to be implemented,

28   and Congress and the military have not had an adequate opportunity to act on these

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-
02391-DSF(MANx)

-17-

issues so plainly within their discretion and sphere of expertise, it would be entirely premature for the Court to venture a ruling on where the equal protection calculus should now fall with respect to the registration system.

In short, because Plaintiffs' claim of liability is contingent on an uncertain future event, the claim is not yet ripe, and the Court should dismiss the matter.

**IV.    SHOULD THE COURT REACH THE MERITS OF THIS CASE, IT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Should the Court determine that it has jurisdiction over this case and that it is properly brought in this venue, then it should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state a claim upon which relief can be granted.  Counts I and III are brought on legal theories that have nothing whatsoever to do with federal defendants.  Plaintiffs' central equal protection challenge in Count II fails because the law is clear that courts should defer to the military and political branches as it develops policies related to the armed forces.  Moreover, and in any event, this district court may not  overturn a directly controlling precedent of the Supreme Court alleged to be outdated but must defer to the Supreme Court to review its own decisions.

**A.    The Legal Theories of Counts I & III Apply to State, not Federal Actors.**

Counts I and III should be dismissed outright.  Plaintiffs purport to press claims under the Fourteenth Amendment of the Constitution (Count I) and "28 U.S.C. § 1983" (Count III).  *See* Compl. ¶¶ 28-31.  Neither provides a basis for

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-18-

action against federal defendants.

The Fourteenth Amendment provides that "No *State* shall … deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV (emphasis added).  It is beyond dispute that the Fourteenth Amendment does not provide an independent basis for action against the Federal Government.  *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 542 n.21 (1987).  Count I must be dismissed.

Likewise, Plaintiffs improperly assert a cause of action under "28 U.S.C. § 1983."  Presumably, the plaintiffs intended to invoke 42 U.S.C. § 1983.  That statute however, is addressed to violations of rights "under color of any statute, ordinance, regulation, custom, or usage, of *any State or Territory or the District of Columbia* .…" 42 U.S.C. § 1983 (emphasis added).  42 U.S.C. § 1983 simply does not apply to the "actions of the Federal Government and its officers."  *District of Columbia v. Carter*, 409 U.S. 418, 524-25 (1973).  Accordingly, this count should be dismissed for failure to state a claim.

**B.  Plaintiffs Fail to State a Valid Equal Protection Challenge at this Stage.**

In Count II, Plaintiffs assert that the current registration requirements, which were upheld as constitutional by the Supreme Court in *Rostker* are nevertheless unconstitutional today because they deny men the equal protection of the law. Plaintiffs' assertion fails to state a claim under the Supreme Court's analysis of equal protection in the military context.  As a general matter, "[t]o withstand

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-19-

scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.'" *Califano v. Webster*, 430 U.S. 313, 136-17 (1977). In *Rostker*, the Supreme Court found that Congress' objective in establishing the MSSA and the registration requirement was the "raising and supporting of armies," which was undeniably important. *See Rostker*, 453 U.S. at 70. In deciding whether to find that Congress's choice of alternatives was substantially related to that goal, the Court concluded that Congress' choice to register men was "not only sufficiently but also closely related to Congress' purpose in authorizing registration." *Id.* at 79. Plaintiffs' complaint advances no argument that Congress' purpose in authorizing registration is no longer important. Instead, they appear to argue that Congress' chosen method of achieving that interest, while undisputedly constitutional in 1979, is now unconstitutional because of subsequent events. But the principals of deference taught in *Rostker* and related cases apply to foreclose judicial interference in the policy process now underway concerning the role of women in combat and the impact of policy changes on the Selective Service system.

## 1. The Court Should Defer to the Political Branches' Determinations Regarding the Country's Military Needs.

The law is clear that "in the context of Congress' authority over national defense of military affairs" the courts' deference is particularly broad. *See Rostker*, 453 U.S. at 64. Congress has a "'broad constitutional power' to raise and

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-20-

regulate armies," and "[n]ot only is the scope of Congress' constitutional power in this area broad, but the lack of competence on the part of the courts is marked." *Id.* Ultimately, "in deciding" whether Congress has acted constitutionally in a military matter, courts "must be particularly careful not to substitute [their] judgment of what is desirable for that of Congress, or [their] judgment of what is desirable for that of Congress, or [their] own evaluation of evidence for a reasonable evaluation by the Legislative Branch." *Id.* at 68.  These broad principals have been repeatedly affirmed by the Supreme Court.[3]

Indeed, "'judicial deference … is at its apogee' when Congress legislates under its authority to raise and support armies." *Forum for Acad. & Inst. Rights*, 547 U.S. at 58.  What sorts of troops might be needed in a future draft is based on "judgments concerning military operations and needs" in the exercise of that power.  *Rostker*, 453 U.S. at 68.  The courts are not well positioned to either second-guess Congress's judgments about these judgments or to make them in the first instance.  "The Judiciary has neither the power nor the competence to undertake these awesome responsibilities and, thus, should defer to the will of

---

[3] *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727 (2010) (citing *Rostker*); *Boumediene v. Bush*, 533 U.S. 723, 823 (2008) (citing *Rostker*); *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 58 (2006); *Loving v. U.S.*, 517 U.S. 748, 768 (1996) (citing *Rostker*); *Weiss v. U.S.*, 510 U.S. 163, 177 (1994) (citing *Rostker*); *Solorio v. U.S.*, 483 U.S. 435, 447-48 (1987) (citing *Rostker*); *Goldman v. Weinberger*, 475 U.S. 503, 508 (1986) (citing *Rostker*); *Chappell v. Wallace*, 462 U.S. 296, 301 (1983) (citing *Rostker*).

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-21-

Congress in carrying out" the duty to provide for the common defense.  *See Schwartz v. Brodsky*, 265 F. Supp. 2d 130, 135 (D. Mass. 2003).

Pursuant to these bellwether principles, the Court should defer to the policymaking process presently underway in the military and Congress concerning the role of women in combat and not permit Plaintiffs to interfere in that process. Plaintiffs cannot establish, nor should the Court attempt to predict, the effect that the implementation of changed policies will have on overall military needs in case of draft.  While the Secretary of Defense has rescinded the prohibition on women in combat, that policy change is in the process of being fully implemented.  *See, e.g.*, Stmt. by John M. McHugh & Raymond Odierno, Senate Armed Services Committee at 12, Apr. 23, 2013 (Ex. C at 46).[4]  Congress has not yet been informed of all the details of that change and thus has not yet considered whether to revise the Selective Service requirements.  The law counsels that courts should not substitute its judgment for that of Congress and, in the present circumstances, take any action in advance of Congress in a significant matter of military affairs.

Indeed, it would be particularly inappropriate for the Court to intervene here, where Congress is aware of the interplay between the role of women in combat and future Selective Service needs and has made specific provisions for considering the issue as circumstances change.  10 U.S.C. § 652 provides that before the Secretary

---

[4] Available at http://www.armed-services.senate.gov/statement/2013/04%20April/McHugh-Odierno_04-23-13.pdf

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-22-**

of Defense "opens to service by female members of the armed forces any category of unit or position that at that time is closed to service by such members," he or she must notify Congress. *See* 10 U.S.C. § 652(a)(1) & (2). In reporting to Congress, the Secretary is required to provide, "a detailed analysis of legal implication of the proposed change with respect to the constitutionality of the application of the [MSSA] to males only." *Id.* § 652(a)(3)(B). Accordingly, Congress is aware of the connection between the changing shape of the military and Selective Service registration and is requiring that the Executive provide it with information so that it can exercise its judgment at the appropriate time. The Court should thus not interfere before Congress has had an adequate chance to consider the matter just months after the military instituted new policies.

In sum, while the United States military continues to evolve as an organization, it would be inappropriate for courts to intervene at this stage. Plaintiffs ask this Court step in and make its own judgment before Congress has even had time to react to ongoing changes in the structure of the military. To do so would be wholly inconsistent with the requirement that courts defer to Congress's military judgments, especially with respect to raising armies, a duty specifically assigned in the Constitution to the legislature.

### 2. Even if the Court Declined to Defer to the Military, It Would Remain Bound by *Rostker* at this Stage.

Finally, even if the Court were inclined not to defer to the ongoing policy process in Congress and the military, it still should not overturn *Rostker* as a legal

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-23-

matter.  Plaintiffs' claim is based on the premise that the Supreme Court's reasoning in *Rostker* is outdated and that, therefore, the Court should order the defendants to change their policies.  *See* Compl. ¶¶ 19-20.  In essence, therefore, they ask this Court to both overrule a controlling precedent of the Supreme Court and substitute this Court's judgment for that of Congress and the President with respect to the functioning of the Selective Service System.  Defendants respectfully suggest that the Court should do neither of these things.

As the Supreme Court has explained, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).  The Ninth Circuit has elaborated:  "the circuit courts must follow Supreme Court precedent until the Supreme Court itself declares it no longer binding." *Musladin v. Lamarque*, 555 F.3d 830, 837 (9th Cir. 2009).  That this is so is dictated by the hierarchical nature of the federal courts.  Lower courts must follow the precedents set by higher courts:  "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court overrules or modifies it.  Judges of the inferior courts may voice their criticisms, but follow it they must." *Hart v. Massanari*, 266 F.3d 1155, 1170-71 (9th Cir. 2001).

The opposite approach, under which district and circuit courts determine

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-24-

when a Supreme Court precedent has become outdated or no longer binding, would

undermine the very purposes of *stare decisis*, run contrary to the hierarchical

nature of federal courts, and improperly remove from the Supreme Court the

prerogative of deciding when it is appropriate for it to overturn its own precedents.

Adherence to the doctrine of *stare decisis* "promotes the evenhanded, predictable,

and consistent development of legal principles, fosters reliance on judicial

decisions, and contributes to the actual and perceived integrity of the judicial

process." *Payne v. Tennessee*, 501 U.S. 888, 827 (1991).  Even where a litigant

asserts that a decision is "outdated," it can only be overturned by the court that

issued the decision.  An inferior court cannot decide for itself that a precedent has

reached its expiration date.  *See Rambus, Inc. v. Hynix Semiconductor Inc.*, 569 F.

Supp. 2d 946, 964 (N.D. Cal. 2008).  Even if the Court agrees with Plaintiffs' view

of the equal protection claim, it should not arrogate to itself the power to reverse

Supreme Court precedent.  *See State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) ("[I]t

is this Court's prerogative alone to overrule one of its precedents.").

## CONCLUSION

For the forgoing reasons, this case must be dismissed.

Notice of Mot. & Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-25-

Dated:  June 17, 2013                    Respectfully Submitted,

                                         STUART F. DELERY
                                         Acting Assistant Attorney General

                                         ANTHONY J. COPPOLINO
                                         Deputy Branch Director


                                         *Bryan R. Diederich*
                                         BRYAN R. DIEDERICH (MA Bar. No. 647632)
                                         United States Department of Justice
                                         Civil Division
                                         20 Massachusetts Ave, NW
                                         Washington, D.C. 20004
                                         Tel: (202) 305-0198
                                         Fax: (202) 616-8470
                                         Bryan.Diederich@usdoj.gov
                                         *Counsel for the Defendants*

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.***, CV13-02391-DSF(MANx)**

**-26-**