# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| NATIONAL COALITION FOR MEN *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>SELECTIVE SERVICE SYSTEM *et al.*,<br><br>    Defendants. | No. 4:16-cv-3362 |

## DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

   I.  The Military Selective Service Act ..............................................................2

   II. *Rostker*: The Supreme Court Holds that Male-Only Draft Registration is
      Constitutional .............................................................................................3

   III. The Evolving Role of Women in Combat ..................................................5

   IV. Plaintiffs' Challenge ..................................................................................9

LEGAL STANDARD ........................................................................................10

ARGUMENT.....................................................................................................11

   I.  Plaintiffs Lack Standing ...........................................................................12

      A. Plaintiffs Davis and Lesmeister Have Not Suffered an Injury From
         the MSSA's Male-Only Registration Requirement ...........................13

      B. NCFM Has Not Established Associational Standing .......................16

   II. Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted........17

      A. Entry of the Relief Sought Would Impermissibly Intrude on the
         Political Branches' Constitutional Authority over Military Affairs................18

      B. *Rostker* Remains Binding on This Court .......................................21

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

Cases

*Allen v. Wright*,

   468 U.S. 737 (1984) ................................................................................... 13

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009) ................................................................................... 11

*Ballew v. Continental Airlines*,

   668 F.3d 777 (5th Cir. 2012) ..................................................................... 21

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 554 (2007) ................................................................................... 11

*Benton v. United States*,

   960 F.2d 19 (5th Cir. 1992) ................................................................. 10, 15

*Blodgett v. Holden*,

   275 U.S. 142 (1927) ................................................................................... 18

*City of Los Angeles v. Lyons*,

   461 U.S. 95 (1983) ..................................................................................... 12

*Clapper v. Amnesty Int'l USA*,

   568 U.S. 398 (2013) ......................................................................... 12, 13, 15

*Crane v. Johnson*,

   783 F.3d 244 (5th Cir. 2015) ..................................................................... 12

*Dep't of Navy v. Egan,*

    484 U.S. 518 (1988) ...................................................................................... 19

*Elgin v. U.S. Dep't of Treasury,*

    641 F.3d 6 (1st Cir. 2011) ............................................................................ 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*

    528 U.S. 167 (2000) ...................................................................................... 12

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*

    695 F.3d 330 (5th Cir. 2012) ................................................................. 16, 17

*Gilligan v. Morgan,*

    413 U.S. 1 (1973) .......................................................................................... 19

*Goldberg v. Rostker,*

    509 F. Supp. 586 (E.D. Pa. 1980) .................................................................. 3

*Goldman v. Weinberger,*

    475 U.S. 503 (1986) ...................................................................................... 19

*Hegar v. Mattis,*

    No. 12-cv-6005 (N.D. Cal.) ............................................................................ 7

*Holder v. Humanitarian Law Project,*

    561 U.S. 1 (2010) .......................................................................................... 19

*Hotze v. Burwell,*

    784 F.3d 984 (5th Cir. 2015) ........................................................................ 12

*Kreis v. Sec'y of Air Force,*

    866 F.2d 1508 (D.C. Cir. 1989) .................................................................... 19

iii

*Laird v. Tatum*,

    408 U.S. 1 (1972) ................................................................................... 14, 15

*Loving v. United States*,

    517 U.S. 748 (1996) ........................................................................................ 19

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ........................................................................................ 14

*Mistretta v. United States*,

    488 U.S. 361 (1989) ........................................................................................ 18

*Olagues v. Russoniello*,

    797 F.2d 1511 (9th Cir. 1986) .................................................................. 14, 15

*Rodriguez de Quijas v. Shearson*,

    490 U.S. 477 (1989) ........................................................................................ 21

*Rostker v. Goldberg*,

    453 U.S. 57 (1981) .................................................................................. passim

*Schlesinger v. Ballard*,

    419 U.S. 498 (1975) ........................................................................................ 20

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*,

    468 U.S. 841 (1984) ........................................................................................ 13

*Stanfield v. Boston Scientific Corp.*,

    166 F. Supp. 3d 873 (S.D. Tex. 2015) ............................................................ 18

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998) .................................................................................. 10, 14

*Summers v. Earth Island Inst.*,

    555 U.S. 488 (2009) .......................................................................................... 17

*Thomas v. James*,

    661 F.3d 67 (5th Cir. 1981) ............................................................................. 16

*Valley Forge Christian College v. Americans United for Separation of Church & State*,

    454 U.S. 464 (1982) .......................................................................................... 14

*Weiss v. United States*,

    510 U.S. 163 (1994) .......................................................................................... 19

Statutes

5 U.S.C. § 3328 ........................................................................................................ 3

10 U.S.C. § 652 ........................................................................................................ 7

10 U.S.C. § 6015 ...................................................................................................... 5

10 U.S.C. § 8549 ...................................................................................................... 5

50 U.S.C. § 451 ........................................................................................................ 2

50 U.S.C. § 453 ........................................................................................................ 2

50 U.S.C. § 3802 ...................................................................................................... 2

50 U.S.C. § 3811 ...................................................................................................... 3

Pub. L. No. 114-328 .............................................................................................. 8, 9

Regulations

32 C.F.R. § 1615.4(a) ............................................................................................... 3

34 C.F.R. § 668.37.................................................................................................... 3

45 Fed. Reg. 45,247 (July 2, 1980) ............................................................................3

90 Fed. Reg. 2,995 (Jan. 21, 2015)............................................................................3

Rules

Fed. R. Civ. P. 12(b)(1) ...........................................................................10, 15

Fed. R. Civ. P. 12(b)(6) ...............................................................................passim

## INTRODUCTION

After a dismissal, appeal, remand, second partial dismissal and change of venue, plaintiffs have belatedly amended their complaint to challenge the current male-only registration requirements for the Selective Service System—even as Congress and the Executive branches of the Government continue to take steps to address the precise issues at the core of this lawsuit.  In amending, plaintiffs have failed to remedy any of the deficiencies that remained after the Court's last order of dismissal.  Nor does it appear that these deficiencies are presently curable, given the nature of plaintiffs' suit and the circumstances surrounding the law it challenges.

First, although the amended complaint adds one new individual plaintiff and reinstates the organizational plaintiff, National Coalition for Men ("NCFM"), it fails to establish that plaintiffs have standing to challenge the statutory requirement that only men must register for the Selective Service.  Second, plaintiffs continue to fail to state a claim upon which relief may be granted.  The Constitution vests Congress and the Executive with broad discretion over military affairs, particularly with respect to regulation of the composition of the armed forces, as recognized by the Supreme Court in *Rostker v. Goldberg*, 453 U.S. 57 (1981).  While plaintiffs rely primarily on the lifting of the ban on women in combat as their primary rationale for overriding *Rostker*, the military is still in the process of examining the impact of that policy change on the Selective Service System.  Pursuant to the National Defense Authorization Act passed late last year, Congress has established a commission to review and make recommendations on the selective service process, including whether registration should

1

be expanded to include women, based on input from the Secretary of Defense and other Executive agencies.  Consistent with *Rostker*, the Court should defer to the ongoing policy discussions of the political branches in this sensitive area.

For these reasons, set forth further below, the Court should dismiss this action.

## BACKGROUND

### I.    The Military Selective Service Act

In 1948 Congress enacted the Military Selective Service Act ("MSSA"), 50 U.S.C. § 451 *et seq.*, which provides, in pertinent part, that

> it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who . . . is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

*Id.* § 453(a) (1948), *currently codified at* 50 U.S.C. § 3802(a).  The MSSA's registration provision is intended to facilitate conscription into the armed forces if a draft is reinstated, and its sole purpose is to provide a pool of potential combat troops for subsequent induction.  *Rostker*, 453 U.S. at 59-60.

The Selective Service System ("SSS") became inactive in 1975 when President Ford discontinued draft registration.  In 1980, Congress reactivated the registration process at the request of President Carter, who also recommended that Congress amend the MSSA to authorize the registration and conscription of women.  *See id.* at 59.  After extensively considering the question of female-registration in multiple rounds of hearings, floor debate, and committee, Congress declined to amend the Act.  *Id.* at 72. Congress explained that "the primary manpower need[ed]" in the event of a draft "would

be for combat replacements," *id.* at 76, and because women were ineligible to serve in combat, they should be exempted from the registration requirement. *See id.* at 76-82. Thereafter, on July 2, 1980, President Carter reinstated the male-only registration requirement. Proclamation No. 4771, 45 Fed. Reg. 45,247 (July 2, 1980).

Registration for the Selective Service can be accomplished in a variety of ways. The registrant is required to provide no more than his "name, date of birth, sex, Social Security Account Number (SSAN), current mailing address, permanent residence, telephone number, date signed, and signature, if requested …." 32 C.F.R. § 1615.4(a). The estimated time to fill out the form is less than two minutes. *See* Forms Submitted to the Office of Management & Budget for Extension of Clearance, 90 Fed. Reg. 2,995 (Jan. 21, 2015). Failure to register when required can have consequences, including criminal liability or bans on federal student aid or employment. *See* 50 U.S.C. §§ 3811(a), (f); 5 U.S.C. § 3328; 34 C.F.R. § 668.37.

## II.    *Rostker*: The Supreme Court Holds that Male-Only Draft Registration Is Constitutional

In *Rostker*, the Supreme Court considered whether the MSSA's male-only registration requirement violated the equal protection component of the Fifth Amendment. The case came to the Court on direct appeal from a three-judge district court, which—after independently evaluating the evidence collected by Congress— concluded that "the MSSA unconstitutionally discriminates between males and females." *Goldberg v. Rostker*, 509 F. Supp. 586, 605 (E.D. Pa. 1980). The Supreme Court reversed, explaining that courts must accord "great weight to the decisions of Congress,"

particularly in the "context of Congress' authority over national defense and military affairs," where the "lack of competence on the part of the courts is marked." *Rostker*, 453 U.S. at 64-65 (citation omitted).  The Court emphasized that judicial deference "is at its apogee when legislative action under the congressional authority to raise and support armies" is challenged, as the "constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." *Id.* at 65, 70 (citation omitted).  The Court further noted that "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Id.* at 65 (citation omitted).  The Supreme Court admonished the lower court for conducting its own assessment of congressional evidence, emphasizing that the judiciary must be "particularly careful not to substitute [its] judgment of what is desirable for that of Congress, or [its] own evaluation of evidence for a reasonable evaluation by the Legislative Branch." *Id.* at 68.

In light of the substantial deference owed to Congress, the Supreme Court concluded that exempting women from the registration requirement did not violate the Fifth Amendment.  "Congress did not act unthinkingly or reflexively" in choosing to exempt women from registration, the Court explained; rather, the question "not only received considerable national attention and was the subject of wide-ranging public debate, but also was extensively considered by Congress in hearings, floor debate, and in committee." *Id.* at 72 (citation and internal quotation marks omitted).  Moreover, exempting women from the registration requirement was not based on an invidious gender classification, "but rather realistically reflects the fact that the sexes are not

4

similarly situated" for purposes of a draft or registration for a draft.  *Id.* at 79.  Because

Congress had determined that the purpose of registration "was to prepare for a draft of

combat troops," and women "as a group, . . . are not eligible for combat," the Court

concluded that "[t]he exemption of women from registration is not only sufficiently but

also closely related to Congress' purpose in authorizing registration."  *Id.* at 76-79.

## III.    The Evolving Role of Women in Combat

Since *Rostker*, Congress and the military have eased the restrictions on women's

eligibility for combat positions.  By 1993, Congress had repealed statutory prohibitions

on assigning women to duty on aircraft and ships engaged in combat, *see* 10 U.S.C.

§§ 6015, 8549, and in 1994, the Secretary of Defense issued the "Direct Ground Combat

Definition and Assignment Rule" ("DGCDAR"), which opened some units and positions

previously closed to women.  *See* Off. of the Under Sec'y, Report to Congress on the

Review of Laws, Policies & Regulations Restricting the Service of Female Members in

the U.S. Armed Forces at 17-18 (Feb. 2012), attached as Ex. A to Defs.' First Mot. to

Dismiss (ECF No. 11-2).  In 2012, the Department of Defense ("DoD") approved an

exception to the DGCDAR that made women eligible for direct ground combat units in

specific occupations at the battalion level and above.  *See id.* at 19-22.  In January 2013,

the Secretary of Defense and the Chairman of the Joint Chiefs of Staff rescinded the

DGCDAR, thereby removing the last remaining barriers to assigning women to direct

ground combat positions and units.  Mem. on Elimination of the 1994 Direct Ground

Combat Definition & Assignment Rule (Jan 24. 2013), attached as Ex. B to Defs.' First

Mot. to Dismiss at 1-2.  He directed the military departments to develop implementation

plans for the review of service-level policies and standards, and to move forward

expeditiously with the integration of women into combat roles on a timeline to be

completed no later than January 1, 2016. *Id.* at 1. Exceptions to the directive could be

requested but were to be "narrowly tailored, and based on a rigorous analysis of factual

data regarding the knowledge, skills and abilities needed for the position" and personally

approved first by the Chairman of the Joint Chiefs of Staff and then by the Secretary. *Id.*

at 2.

On December 3, 2015, the Secretary announced his "determin[ation] that no

exceptions are warranted to the full implementation of the rescission of the '1994 Direct

Ground Combat Definition and Assignment Rule'" and that "[a]nyone, who can meet

operationally relevant and gender neutral standards, regardless of gender, should have the

opportunity to serve in any position." *See* Mem. from Sec'y of Def. on Implementation

Guidance for the Full Integration of Women in the Armed Forces at 1 (Dec. 3, 2015),

http://www.defense.gov/Portals/1/Documents/pubs/OSD014303-15.pdf. The Secretary

further directed the Secretaries of the Military Departments and the Chiefs of the Military

Services to submit final, detailed implementation plans for the opening of all military

occupational specialties, career fields, and branches for accession by women for approval

no later than January 1, 2016. *Id.*

The Military Services (Army, Navy, Air Force and Marine Corps) and the U.S.

Special Operations Command ("USSOCOM") complied with the deadline, and on March

9, 2016, the Secretary approved each of the Services' and USSOCOM's final

implementation plans. *See* Mem. from Sec'y of Def. to Sec's of the Military Dep'ts on

Approval of Final Implementation Plans for the Full Integration of Women in the Armed

Forces (Mar. 9, 2016),

http://www.defense.gov/Portals/1/Documents/pubs/SIGNED_SD_WISR_Implementation

_Memo.pdf.  The final implementation plans are available publicly on DoD's website at

http://www.defense.gov/News/Publications.  The Services and USSOCOM are currently

executing their implementation plans.  *See Hegar v. Mattis*, No. 12-cv-6005 (N.D. Cal.),

ECF No. 99 at 19-23 (summarizing status of implementation).

   Additionally, Congress continues to exercise active oversight of these matters.  By

law, DoD was required to notify Congress 30 days before any new direct combat position

or military occupational specialty was opened to women.  That notice had to include "a

detailed description of, and justification for, the proposed change," as well as "a detailed

analysis of legal implication of the proposed change with respect to the constitutionality

of the application of the Military Selective Service Act . . . to males only."  10 U.S.C.

§ 652(a)(3)(A)-(B).  In its final notice to Congress, submitted on December 3, 2015, the

Secretary of Defense notified Congress that DoD intended to assign women to previously

closed positions and units across all Services and USSOCOM.  The notice observed that

while "[t]he opening of all direct ground combat positions to women further alters the

factual backdrop to the…decision in *Rostker*," the Supreme Court "did not explicitly

consider whether other rationales underlying the statute would be sufficient to limit the

application of the MSSA to men," and that DoD would consult with the Department of

Justice as appropriate on these issues.  *See* Defs.' Second Mot. to Dismiss, Ex. 1 (ECF

No. 34-2).

7

Congress and the Executive branch have also begun to analyze the specific question of whether women should be required to register for the selective service. On December 23, 2016, the 2017 National Defense Authorization Act ("2017 NDAA"), Pub. L. No. 114-328, was signed into law. Sections 551-557 of the 2017 NDAA established the National Commission on Military, National, and Public Service ("Commission") to review the military selective service process, including the current and future need for a centralized registration system and expanding registration to include women. The law requires specific actions to be taken by the President, various departments of the Executive Branch, and certain members of Congress, including but not limited to the following:

- On April 3, 2017, the President established and transmitted to the Commission and Congress principles for the reform of the military selective service process (Pub. L. No. 114-328 § 555(c)(1)), *see* Exhibit A attached hereto;

- On July 13, 2017, the Secretary of Defense submitted to the Committees on Armed Services of the Senate and the House of Representatives and to the Commission, a report "on the current and future need for a centralized registration system under the Military Selective Service Act . . . [and on] expanding registration to include women" (Pub. L. No. 114-328 § 552(a)(1) & (b)(1)(C)), *see* Exhibit B attached hereto;

- By December 5, 2017, the Secretary of Defense, Attorney General, the Secretary of Homeland Security, the Secretary of Labor, and such other

Government officials, and such experts, as the President shall designate,

shall jointly transmit to the Commission and Congress recommendations

for the reform of the military selective service process and military,

national, and public service in connection with that process (Pub. L. No.

114-328 § 555(d)).

The Commission has 30 months from its establishment date of May 5, 2017, or

until November 5, 2019, to conduct a review of the Selective Service System and report

its recommendations to Congress and the President.  Pub. L. No. 114-328 § 555(e)(1)).

## IV.    **Plaintiffs' Challenge**

On or about April 4, 2013, NCFM and James Lesmeister filed this suit in the

Central District of California, alleging that the SSS's restriction of its registration

requirement to males violated their equal protection rights and seeking injunctive and

declaratory relief "for Defendants to treat women and men equally by requiring both

women and men to register for the U.S. military draft."  Compl. at 1 (ECF No. 1).

Plaintiffs asserted that in light of the Secretary's January 2013 announcement lifting the

ban on women in combat, *Rostker* no longer applies.  *Id.* ¶ 19.

The Government moved to dismiss on the grounds that the suit was not ripe and

that plaintiffs lacked standing, had brought suit in the wrong venue, and had failed to

state a claim upon which relief could be granted.  Defs.' First Mot. to Dismiss (ECF No.

11).  The district court agreed that the action was not ripe and granted the motion without

reaching the Government's other arguments, ECF No. 20, and plaintiffs appealed.  On

February 19, 2016, the Ninth Circuit reversed and remanded, holding that plaintiffs'

9

claims were ripe for adjudication.  *NCFM*, 640 F. App'x 664, 665 (9th Cir. 2016).  The Court of Appeals noted that "[m]uch of [the] uncertainty has passed" with respect to which positions in combat would be open to women, and that "whether there has been sufficient change to revisit *Rostker* is a question about the merits of [plaintiffs'] claims, not about ripeness."  *Id.* at 665-66.

On remand, the Government moved to dismiss again on grounds that the district court had not previously addressed.  Defs.' Second Mot. to Dismiss (ECF No. 34).  This time, the district court dismissed plaintiff NCFM for failing to establish organizational or associational standing, held that venue was improper, and transferred the action to the Southern District of Texas, where plaintiff Lesmeister resides.  *See generally* Order re: Defs.' Mot. to Dismiss (ECF No. 44).  Plaintiffs thereafter moved to amend their Complaint to add, *inter alia*, plaintiff Davis and reinstate NCFM, and requested that the Court transfer the action to the Southern District of California.  *See generally* Mot. to Amend Compl. & Transfer (ECF No. 57).  On August 16, 2017, this Court granted plaintiffs' motion to amend, but denied the request for transfer.  Mem. Op. & Order (ECF No. 59).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden to show that the court has jurisdiction over its claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  Where, as here, a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, it is subject to the same standard as a motion brought under Rule 12(b)(6).  *See Benton v. United States*, 960 F.2d 19, 21

10

(5th Cir. 1992).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  In ruling on the motion to dismiss, the court must take the well-pleaded facts as

true but is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Id.*

## ARGUMENT

Plaintiffs' amended complaint, like its predecessor, should be dismissed.  As an

initial matter, plaintiffs Davis and Lesmeister have not established standing to bring this

suit because they have failed to demonstrate any concrete or imminent actual injury

arising from the MSSA's requirement that only men register.[1]  By extension, NCFM has

failed to establish associational standing since it has not identified any individual

members who have standing to sue in their own right.[2]  Even if plaintiffs had standing,

their suit must be dismissed because the Court cannot grant the relief they seek without

curtailing a long tradition of deference to the judgment of Congress and the military as

---

[1] Although Judge Fischer previously ruled that plaintiff Lesmeister has standing, this Court may reconsider that holding in light of the fact that the Ninth Circuit case law relied upon by Judge Fischer does not govern this Court and in fact is in tension, if not direct conflict, with current Supreme Court and Fifth Circuit law.  *See infra* at 14-16 & n.3.

[2] Plaintiffs' amended complaint confirms by omission that plaintiff Lesmeister, unlike Davis, is *not* a member of NCFM.  *See* First Am. Compl. ("FAC") ¶¶ 7, 8 (ECF No. 60).

they continue to consider the impact of changes to the role of women in combat on Selective Service registration.

## I.      Plaintiffs Lack Standing

In order to invoke the Court's jurisdiction, plaintiffs "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  As part of this threshold, plaintiffs must show that they have standing to bring suit.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015), *cert denied*, 136 S. Ct. 1165 (2016).  To satisfy Article III's standing requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  The standing inquiry is particularly rigorous where, as here, a court is asked to find the actions of the other branches of government unconstitutional.  *See Clapper*, 568 U.S. at 408; *Hotze*, 784 F.3d at 992 (citing *Clapper*); *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (same).  Here, the amended complaint is bereft of any allegation that would demonstrate that any of the plaintiffs have standing to challenge the MSSA.

12

A.     **Plaintiffs Davis and Lesmeister Have Not Suffered an Injury From the MSSA's Male-Only Registration Requirement**

Plaintiffs Lesmeister and Davis have failed to establish standing because they have failed to allege an injury-in-fact.  For each of them there is only a single paragraph in the amended complaint that vaguely states that he was "harmed by or subject to the sex-discriminatory registration requirements"—without explaining how he was harmed.  FAC ¶¶ 7, 8.  Nor is there any possibility that either can demonstrate a harm cognizable under Article III.  Because both Mr. Lesmeister and Mr. Davis had already registered with the Selective Service at the time the amended complaint was filed, neither was or currently is subject to any action to enforce the requirements of the MSSA.  *See, e.g., Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 853 (1984) (noting that non-registrant becomes eligible for student aid as soon as he registers).  Nor can they credibly argue that the prospect of being drafted constitutes a concrete harm.  Whether there would ever be a war that would prompt Congress to reinstate draft procedures is entirely hypothetical and far too speculative to support standing.  *See Clapper*, 568 U.S. at 401.

To the extent plaintiffs contend that requiring only men and not women to register poses a *de facto* injury to them because it is unconstitutional, they are wrong.  The mere desire that the government adopt policies consistent with a plaintiff's view of the Constitution is not sufficient to confer standing under Article III.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court.").  Article III does not create "publicly funded forums for

13

the ventilation of public grievances," *see Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 473 (1982), nor are the federal courts an appropriate forum for plaintiffs to obtain policy changes they prefer. *See Steel Co.*, 523 U.S. at 106-07 (plaintiff lacks standing based on "'undifferentiated public interest' in faithful execution of [a statute]") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992)). As discussed at greater length below, the appropriate forum for determining the future of the Selective Service is in Congress.

The Government recognizes that this Court's predecessor, Judge Fischer, previously held that plaintiff Lesmeister had standing to bring this suit. ECF No. 44 at 2-3. The court relied on a Ninth Circuit decision that found a plaintiff to have standing "where the government required plaintiff to prove citizenship when requesting a bilingual ballot, but did not require such proof when people requested English language ballots." *Id.* at 3 (citing *Olagues v. Russoniello*, 797 F.2d 1511, 1518 (9th Cir. 1986) (en banc), *vacated as moot on other grounds*, 484 U.S. 806 (1987)). Judge Fischer applied the reasoning of *Olagues* to plaintiff Lesmeister on the grounds that the Government required him to register and provide address updates to the SSS, but "does not impose such obligations on women." *Id.* However, *Olagues*, which is not binding on this Court, involved very different factual circumstances and legal claims from this case. In *Olagues*, the plaintiff's "request for a bilingual ballot triggered an investigation of his INS records by the FBI and INS and an interview by the local District Attorney" at a time

when plaintiff was running for political office, which the Ninth Circuit found to have a

chilling effect that supported his standing to sue.  *Olagues*, 797 F.3d at 1518.[3]

No such comparable circumstances exist here.  Neither Mr. Lesmeister nor Mr.

Davis has pled any kind of "chilling" effect on their First Amendment freedoms—much

less an intrusive investigation—resulting from their being required to register for the

Selective Service, let alone from the fact that women are not so required.  Indeed, neither

Mr. Lesmeister nor Mr. Davis has alleged any negative effects at all from the MSSA's

registration requirements.  While the amended complaint perfunctorily claims that

plaintiffs Lesmeister and Davis are "harmed by *or* subject to the sex-discriminatory

registration requirements," FAC ¶¶ 7, 8 (emphasis added), such conclusory allegations

are not enough to withstand a motion to dismiss.  *See Benton*, 960 F.2d at 21 (applying

Rule 12(b)(6) standard for dismissal to motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1)).  Not only does the amended complaint fail to identify

any specific, concrete harm that either Mr. Davis or Mr. Lesmeister has suffered; it fails

---

[3] While *Olagues* further held that the Supreme Court's decision in *Laird v. Tatum*, 408 U.S. 1 (1972), "recognizes that a plaintiff has standing when the government improperly imposes an affirmative obligation on him," 797 F.2d at 1518, this is an overreading of *Laird*.  In *Laird*, plaintiffs alleged that they were subject to a government surveillance program that chilled their First Amendment freedoms.  The Supreme Court held that they lacked standing because "allegations of a subject 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  408 U.S. at 13-14.  In reaching that conclusion, the court acknowledged a line of case law finding that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment right."  *Id.* at 11.  That First Amendment principle, however, is not at issue in the instant suit.  Moreover, the Supreme Court made clear in *Laird* that "these decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action."  *Id.* at 13.  This requirement of a direct, imminent injury to establish standing has been since reaffirmed by the Supreme Court.  *See Clapper*, 568 U.S. at 417-18 (reaffirming that under *Laird*, subjective fear of surveillance was not sufficient to establish standing).

to establish how they have been harmed at all by being subject to the registration requirements. *See Thomas v. James*, 661 F.3d 67, 68-69 (5th Cir. 1981) (prisoners lacked standing to challenge regulations limiting access to outside money because they failed to show how restrictions injured them). In particular, plaintiffs Davis and Lesmeister fail to show how they have been harmed by their core complaint that women are *not* required to register.

For these reasons, the Court should hold that plaintiff Davis lacks standing to bring this suit and revisit the earlier ruling in this case with respect to plaintiff Lesmeister's standing.

**B.      NCFM Has Not Established Associational Standing**

Although NCFM asserts that it has associational standing "because some NCFM members, including Plaintiff Davis, would otherwise have standing to sue in their own right," FAC ¶ 5, the amended complaint fails to set forth sufficient allegations to support such standing.

To seek relief on behalf of its members, NCFM must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (citation omitted). NCFM merely recites the legal conclusion that it meets these standards while providing virtually no details to show that its claim is even plausible. *See* FAC ¶ 5. More fundamentally, NCFM's bid for associational standing fails because it

16

has not identified a single individual member who has standing, including Mr. Davis, who avers he is an NCFM member but lacks standing to sue in his own right.  In order to establish associational standing, the Supreme Court has "required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). NCFM's complete failure to allege any facts that show that a single member has standing is fatal to its attempt to invoke the Court's jurisdiction.  *Funeral Consumers All.*, 695 F.3d at 344.

## II.    Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted

Assuming *arguendo* that the Court has jurisdiction, it should nonetheless dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because plaintiffs fail to state a claim upon which relief can be granted.  While there have been substantial changes to women's roles in combat since *Rostker* was decided, *Rostker* nonetheless makes plain that courts should accord Congress and the Executive the utmost deference in matters implicating their constitutional powers to raise and support armies. Here, the relief plaintiffs seek plainly would intrude on the political branches' constitutional power to raise and regulate the armed forces.  Moreover, a district court may not overturn a directly controlling precedent of the Supreme Court alleged to be outdated but rather must defer to the Supreme Court to review its own decisions.

### A.   Entry of the Relief Sought Would Impermissibly Intrude on the Political Branches' Constitutional Authority over Military Affairs

The Supreme Court's holding in *Rostker* that courts must defer to the political branches in the development of military personnel policy remains good law that governs this case.  Here, as in *Rostker*, the role of the MSSA in light of present military conditions has been and continues to be the subject of explicit consideration by the political branches.  Most notably, as detailed above, Congress has established a commission to review, within a specific time period and with statutorily mandated input from the Executive branches, the needs of and for the SSS—including expanding registration to women.  *See supra* at 8-9.[4]

Adjudicating the constitutionality of an Act of Congress is "the gravest and most delicate duty that [a] Court is called on to perform."  *Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (Holmes, J., concurring).  Thus, when a court "is asked to invalidate a statutory provision that has been approved by both Houses of the Congress and signed by the President . . . it should only do so for the most compelling constitutional reasons." *Mistretta v. United States*, 488 U.S. 361, 384 (1989) (citation omitted).  This principle applies with special force in the context of military affairs, where courts owe substantial deference to Congress and the Executive.  Plaintiffs are asking this Court to interfere in an area that is constitutionally committed to the discretion of the political branches and

---

[4] All of the facts related to Congress and the Executive's recent actions related to the integration of women into combat, the 2017 NDAA, and the Commission cited herein are matters of public record, and therefore may be judicially noticed and considered by this Court without converting the Government's Rule 12(b)(6) motion to a motion for summary judgment.  *See, e.g., Stanfield v. Boston Scientific Corp.*, 166 F. Supp. 3d 873, 877 (S.D. Tex. 2015).

18

has not yet been fully addressed by those branches.  Indeed, "it is difficult to conceive of an area of governmental activity in which the courts have less competence.  The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches."  *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).

Because the Constitution clearly states that the governance of military affairs is a shared responsibility of Congress and the President, deference by the courts to military-related judgments by Congress and the Executive is deeply embedded in Supreme Court case law.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010); *Loving v. United States*, 517 U.S. 748, 768 (1996); *Weiss v. United States*, 510 U.S. 163, 177 (1994); *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).  Not only "is the scope of Congress' constitutional power in this area broad, but the lack of competence on the part of the courts is marked."  *Rostker*, 453 U.S. at 65.  Courts must therefore be "particularly careful not to substitute [their] judgment of what is desirable for that of Congress, or [their] own evaluation of evidence for a reasonable evaluation by the Legislative Branch."  *Id.* at 68.  Deference by the courts is due not only to the political branches, but also to the "considered professional judgment" of military officials, *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986), particularly regarding "complex . . . decisions as to the composition" of the military, *Rostker*, 453 U.S. at 65 (citation omitted).

19

Pursuant to these well-settled principles, the Court should defer to the policymaking process presently underway in Congress and the Executive branch concerning the role of women in the military and specifically whether they should be required to register for the Selective Service.  Plaintiffs cannot establish, nor should the Court attempt to predict, the effect that the changed policies will have on overall military needs if a draft is reinstated, particularly where the political branches are directly engaged in exploring these issues.  *See Rostker*, 453 U.S. at 75 (explaining that "Congress rather clearly linked the need for" Selective Service registration and "the character of a subsequent draft").  Congress has created a commission specifically tasked to review the Selective Service process, including expanding registration to include women, and make recommendations to Congress and the President.  As part of that statutorily mandated process, DoD submitted a detailed report on this subject in July of this year.  *See* Ex. B. Under these circumstances, the Court should not substitute its judgment for that of Congress or take any action in a significant matter concerning military affairs until the political branches have had an opportunity to weigh and fully consider the questions raised by the recent policy changes.  *See Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("[I]t is the primary business of armies and navies to fight [wars] . . . . The responsibility for determining how best our Armed Forces shall attend to that business rests with Congress … and with the President.") (citations omitted); *id.* at n.13 (deference to Congress is even more appropriate when pending legislation may remedy a challenged classification).

20

Granting plaintiffs the relief they seek would fundamentally intrude on the exercise of that authority and would be plainly inconsistent with the substantial deference that courts owe the political branches regarding military affairs.  In particular, granting such relief would deprive Congress and the military of the opportunity to apply their judgment and expertise in determining the impact of recent changes in military structure on the system of registration for conscription.

### B.    *Rostker* Remains Binding on This Court

Finally, even though circumstances have changed significantly since *Rostker* was decided, that decision remains binding on this Court.  It is well established that the lower courts are bound to follow Supreme Court precedent, even when the underpinnings of a decision have been called into question.  *See Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989); *Ballew v. Continental Airlines*, 668 F.3d 777, 782 (5th Cir. 2012). Under this rule, *Rostker* governs, with no need for further inquiry.  *See Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 24 (1st Cir. 2011) (Stahl, J., concurring) ("[I]t would not be for this court to determine what, if any, impact these developments had on the continued vitality of *Rostker*, a task left solely to the Supreme Court.").  Accordingly, the Court should decline plaintiffs' invitation to disregard binding Supreme Court precedent and instead allow the political branches an adequate opportunity to consider these complicated questions before interfering in a matter that is within their constitutional discretion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss this action in its entirety.


Date: October 6, 2017                          Respectfully submitted,

                                               CHAD A. READLER
                                               Acting Assistant Attorney General

                                               ANTHONY J. COPPOLINO
                                               Deputy Director, Federal Programs Branch

                                               _/s/ Lynn Y. Lee_
                                               LYNN Y. LEE (Cal. Bar #235531)
                                               Trial Attorney
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               20 Massachusetts Avenue NW
                                               Washington, D.C. 20530
                                               Tel: (202) 305-0531
                                               E-mail: lynn.lee@usdoj.gov

22

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2017, I electronically filed a copy of the foregoing.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

_/s/ Lynn Y. Lee_
LYNN Y. LEE