Marc E. Angelucci, Esq. (SBN 211291)
Appearing *Pro Hac Vice*
LAW OFFICE OF MARC E. ANGELUCCI
P.O. Box 6414
Crestline, California 92325
Telephone: (626) 319-3081
Facsimile: (626) 236-4127
Email: Marc.Angelucci@yahoo.com

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| NATIONAL COALITION FOR MEN; ANTHONY DAVIS; AND JAMES LESMEISTER, Individually and on behalf of others similarly situated,<br><br>PLAINTIFFS,<br>    v.<br><br>SELECTIVE SERVICE SYSTEM; LAWRENCE G. ROMO, as Director of SELECTIVE SERVICE SYSTEM; and DOES 1 through 50, Inclusive,<br><br>DEFENDANTS. | Civil Action No. 4:16–cv–03362<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS**<br><br>**Honorable Gray H. Miller**<br>**Action Filed: April 4, 2013** |

Defendants' second motion to dismiss repeats many of the same arguments that were soundly rejected by the Ninth Circuit in ruling on Defendants' first motion to dismiss. Plaintiffs National Coalition For Men ("NCFM"), Anthony Davis ("Davis"), and James Lesmeister ("Lesmeister") (together, "Plaintiffs"), now submit this Opposition to Defendants' Second Motion to Dismiss ("Motion").

1

**POINTS & AUTHORITIES**

Motions to dismiss are disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In deciding whether to grant a motion to dismiss, the Court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. T*woRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

**I.  LESMEISTER AND DAVIS HAVE STANDING.**

Lesmeister and Davis have pled sufficient facts for their causes of action. They pled that they are males within the age range in which they are required to register under the Military Selective Service Act ("MSSA"), and therefore are harmed because they are required to register for military conscription, continually report their whereabouts to the federal government under penalty of fines, jail, and will be denied federal benefits if they do not. (First Amended Complaint ("FAC"), ¶¶ 6-9, 41-46.) Further, they alleged they are legally harmed by the sex-based discrimination in the MSSA, which requires males, but not females, to register. (FAC ¶ 51.) This sufficiently alleges injury.

The lower courts in *Rostker* rejected this same argument made by Defendants here. The *Rostker* plaintiffs were registered for the Selective Service. (*See, e.g.,* FN 4 of the initial District Court decision stating plaintiff Movent Stephen Retherford already registered for the draft; 509 F. Supp. 586, FN. 4 (1980).) The

2

District Court found the *Rostker* plaintiffs suffered an injury because they were "subject to registration for the draft and subsequent induction into the Armed Services," which rendered the plaintiffs injured as a matter of law. *Rostker, id.,* fn. 2. Specifically, the District Court specifically stated:

> In the instant case **the harm to the plaintiffs is neither remote nor hypothetical**. Those members of the class born in 1960 and 1961 are under compulsion of law to present themselves for registration with the Selective Service System . . . Thereafter these registrants are under a continuing obligation to inform Selective Service of any changes of address, and to maintain proof of registration. . .. Those members of the plaintiff class who registered before April 1, 1975, are under a current legal obligation to maintain their registration and report their changes of residence to the Selective Service. **Those plaintiffs already registered are subject to potential reclassification and induction into the armed services**.

509 F. Supp. at 590–591, emphasis added.

That ruling was never overturned. Instead, the U.S. Supreme Court, in a sharply divided decision, reversed on the ground that men and women are not similarly situated because women were excluded from combat at that time. *Rostker, supra,* 509 F. Supp. at 58.

Specifically, the majority in *Rostker* held:

> Since women are excluded from combat service by statute or military policy, men and women are simply not similarly situated for purposes of a draft or registration for a draft.

*Supra,* 453 U.S. at 58.

3

Opposition to Second Motion to Dismiss

Women have since been increasingly allowed in combat, and the Department of Defense announced women will be allowed in all combat roles. Thus, *Rostker* is no longer good law and needs revisiting.

Sex discrimination is injurious in and of itself. Legislative classifications that distribute benefits and burdens on the basis of gender carry "the baggage of sexual stereotypes." *Orr v. Orr* (1979) 440 U.S. 268, 283. Sex discrimination against one sex perpetuates harmful stereotypes against *both* sexes. Thus, in *Rostker,* the National Organization for Women and Men's Rights, Inc., strange bedfellows from opposite sides of gender politics, both filed amicus briefs arguing that the MSSA promotes sexist gender roles.

Forcing only males to register sends a message that men are the disposable sex. Equal rights for women means equal rights for men as well; otherwise, it is an unbalanced equation, i.e., there is no equation and it is not equal.

Defendants' argument that Lesmeister and Davis would be in the same position as before because they are registered lacks merit, as the remedy can be to require women to register or to stop requiring men to register. As the Ninth Circuit stated in this case:

> For purposes of standing's redressability inquiry, the injuries the Coalition and Lesmeister allege could be addressed either by extending the burden of registration to women or by striking down the requirement for men. When a court sustains an equal protection challenge to a statute, "it may either declare the statute a nullity . . . or it may extend the coverage of the statute." [Citations omitted.].

4

(*See* Ninth Circuit Court of Appeal Memorandum, 2/19/16.)

Plaintiffs take no position on whether the remedy should be to require women to register or to end mandatory draft registration. The latter would certainly change Plaintiffs' position. Either way, the Court would redress the wrong by requiring the government to treat men, including Lesmeister and Davis, and women equally.

Further, requiring women to register would increase the draft registration pool and mathematically make Plaintiffs less likely to be chosen if a draft occurs. The larger the draft pool, the less likely any man (or woman) is to be chosen.

It also makes little sense to say Lesmeister and Davis' compliance with the law defeats their right to challenge sex discrimination. This would mean one must break the law and risk penalties in order to challenge unconstitutional discrimination.

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). Classifications based upon sex, like classifications based upon race, alienage, or national origin, are "inherently suspect" and subject to heightened scrutiny review. *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973) (statute allowing male but not female members

5

Opposition to Second Motion to Dismiss

of the military to receive certain benefits if they were married could not withstand strict scrutiny).[1]

"Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification" for that action.'" *United States v. Virginia,* 518 U.S. 515, 531 (1996). The gender discrimination scheme must be examined under the "heightened" scrutiny mandated by *Craig v. Boren*, 429 U.S. 190 (1976). Under this test, a gender-based classification cannot withstand constitutional challenge unless the classification is substantially related to the achievement of an important governmental objective. *Kirchberg v. Feenstra*, 450 U.S. 455, 459, 459-460 (1981). The party defending the challenged classification carries the burden of demonstrating both the importance of the governmental objective it serves and the substantial relationship between the discriminatory means and the asserted end. *Wengler v. Druggist Mutual Ins. Co.*, 446 U.S. 142, 151 (1980). As a result, the Government must demonstrate that the

---

[1] Notably *Frontiero v. Richardson*, 411 U.S. 677 (1973), another military case, ruled that the Equal Protection Clause of the United States Constitution requires the U.S. military to provide its female members with the same housing and medical benefits as it provides its male members. *Frontiero* discusses America's long and unfortunate history of sex discrimination, *Id.* at 684 – 687. Justice William J. Brennan Jr., in announcing the judgment of the Court, compared the military's unequal treatment of men and women regarding housing and medical benefits to be another example of this country's unfortunate tradition of treating people unequally based on their sex, finding that "Traditionally, such discrimination was rationalized by an attitude of "romantic paternalism" which, in practical effect, put women, not on a pedestal, but in a cage." *Id.* at 684.

6

gender-based classification it employs bears "a close and substantial relationship to [the achievement of] important governmental objectives," *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979).

In the present case, the government bears the burden of proving that excluding women from Selective Service registration, and requiring only men to register, is closely and substantially related to an important governmental purpose. It is not the decision to register men that must be shown to be necessary to further the goal of raising an army, but the decision to register only *men.*

As is already stated above, Plaintiffs alleged a valid Equal Protection challenge by pointing out the sex discrimination in the Selective Service, and have shown that the basis on which *Rostker* was decided has now been officially rescinded.

Accordingly, Lesmeister and Davis, both of whom, at all times relevant to this matter, were of the sex and age required to register for Defendants' male-only draft, have standing. Nonetheless, if necessary, Plaintiffs can amend to cure any defects.

**II. NCFM HAS STANDING.**

Associational standing exists where an organization shows: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in

7

the lawsuit. *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012)(citation omitted).

Here, NCFM has met that burden. As is established above, Davis has standing. And Davis has pled that he is a member of NCFM. (See FAC ¶ 8.) That alone suffices to establish NCFM's standing for purposes of the Complaint.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not require "detailed factual allegations," but merely something more than unadorned labels and conclusions, and must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl Corp v. Twombly* (2007, 550 U.S. 544, 555 – 56, 127 S. Ct. 1955.

### III. **PLAINTIFFS STATE A VALID CLAIM.**

Defendants argue the case should be dismissed because the Court should defer to Congress. This is not an appropriate argument on a Motion to Dismiss. The Ninth Circuit rejected this argument, and that rejection remains binding on any District Court. Discovery and its marshaling of facts is required to determine the status of women in combat after the U.S. Secretary of Defense ordered that women be allowed in all combat roles. Women's status in combat should not be determined by Defendants' arguments in a 12(b)(6) motion.

On January 24, 2013 Secretary of Defense Leon E. Panetta and Chairman of the Joint Chiefs of Staff Martin E. Dempsey issued a Memorandum that officially rescinded the 1994 ban on women in combat.[1] Page 16 of the Memorandum gave the military departments until May 15, 2013 to submit "detailed plans for the implementation of this directive" and directed that integration of women into combat positions be completed "as expeditiously as possible" and no later than January 1, 2016.  The Memorandum further directed that any recommendations to keep women out of certain units must be personally approved by the Chairman and by the Secretary of Defense and must be "narrowly tailored" and "based on rigorous analysis of factual data."  Then in 2015, the Department of Justice announced it would allow women in all combat roles.[2] And just recently, the Pentagon announced that it supports requiring women to register.[3]

Realistically, this case was ripe as soon as women were allowed in *any* combat role.  Again, the *Rostker* decision was based on the old rule that women were categorically barred from *any* combat roles.  Times have changed, and the fact that women are now allowed in combat roles renders a constitutional challenge ripe.  Women have

---

[1] < www.defense.gov/news/WISRJointMemo.pdf >
[2] < www.defense.gov/News/Article/Article/632536/carter-opens-all-military-occupations-positions-to-women/ >
[3] < www.defense.gov/News/Article/Article/632536/carter-opens-all-military-occupations-positions-to-women/ >

already served in hundreds of thousands of tours of duty in the Middle East, and the military has been preparing women for combat.

Defendants' website states during World War II the United States came close to drafting women as military nurses, and the only reason this did not happen was that there a surge of volunteerism arose, and so a draft of women nurses was not needed.[1] If Defendants can sort nurses from combat soldiers, they can also sort female and male soldiers into the combat units they are allowed in today.

This case should to be decided after facts are learned through discovery so it can proceed to a motion for summary judgement and/or a trial, not by a repetitive motion to dismiss.

**CONCLUSION**

For the above reasons, Defendants' motion should be denied, and Plaintiffs allowed to commence discovery on this important issue.

                                          Respectfully Submitted.

                                          Law Office of Marc E. Angelucci

Date: 11/2/17                  By:  //Marc E. Angelucci
                                  Marc E. Angelucci, Esq.
                                  Attorney for Plaintiffs
                                  National Coalition For Men, James Lesmeister, and Anthony Davis

---

[1] < www.sss.gov/Registration/Women-And-Draft/Backgrounder-Women-and-the-Draft >

Opposition to Second Motion to Dismiss