UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATIONAL COALITION FOR MEN and JAMES LESMEISTER, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SELECTIVE SERVICE SYSTEM; DONALD M. BENTON as Director of Selective Service System; and Does 1 through 50, inclusive,<br><br>        Defendants. | No. 4:16-cv-3362 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' opposition to the Government's motion to dismiss only confirms that

the Court should dismiss this action.  As a threshold matter, plaintiffs have failed to

establish standing because they have not identified a sufficiently concrete or imminent

injury resulting from the male-only registration requirement of the Military Selective

Service Act ("MSSA").  But even if they had standing, plaintiffs have not stated a claim

upon which relief may be granted.  As the Supreme Court recognized in upholding the

MSSA in *Rostker v. Goldberg*, 453 U.S. 57 (1981), Congress and the Executive Branch

are entitled to the highest degree of judicial deference in matters that affect the

constitutional power to raise and regulate armies.  Moreover, the Executive Branch, at the

behest of Congress, is currently reviewing the Selective Service registration process—

including the question of whether registration should be expanded to include women—

and preparing recommendations for a commission specifically created by Congress to

address these issues.  Under these circumstances, the Court should refrain from injecting

its own judgment and instead defer to that of the military and the political branches.

For these reasons, the Court should dismiss this action.

## ARGUMENT

### I.      Plaintiffs Have Failed to Establish Standing.

Article III's standing requirement is rooted in the constitutional separation of

powers and "serves to prevent the judicial process from being used to usurp the powers of

the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  The

standing inquiry is "especially rigorous" where, as here, a plaintiff seeks a judicial

determination that the acts of the political branches are unconstitutional.  *Id.*  Here, even

after amending their Complaint, plaintiffs have failed to plead sufficient facts to establish

standing.

### A.      Plaintiffs Lesmeister and Davis Have Failed to Plead an Injury in Fact.

By their own admission, plaintiffs Lesmeister and Davis have already registered

for the Selective Service and are therefore not subject to enforcement action for failure to

register.  First Am. Compl. ("FAC") ¶¶ 7, 8.  They have not pled any other specific or

cognizable injury as a consequence of having to register and have thus failed to meet the

criteria for Article III standing, which requires that an injury must be "concrete,

particularized, and actual or imminent." *Clapper*, 568 U.S. at 409 (citation omitted).[1]

Under this standard, plaintiffs cannot rely on mere conjecture that they may be subject to

a military draft at some unspecified time before they turn 26, absent any existing draft or

showing that a draft is imminent. *See id.* ("[W]e have repeatedly reiterated that

'threatened injury must be *certainly impending* to constitute injury in fact,' and that

'[a]llegations of *possible* future injury' are not sufficient.") (citing *Whitmore v. Arkansas*,

495 U.S. 149, 158 (1990)); *see also* Defs.' Mot. to Dismiss ("Mot.") at 13-16 (ECF No.

63).

Plaintiffs point to the district court's holding in *Rostker* that the plaintiffs, who had

already registered for the Selective Service, had standing based on the fact that they were

"subject to potential reclassification and induction into the armed services," and argue

that this holding "was never overturned." Pls.' Opp'n to Defs.' Mot. to Dismiss

("Opp'n") at 2-3 (ECF No. 64) (citing *Goldberg v. Rostker*, 509 F. Supp. 586 (E.D. Pa.

1980)).  However, the decision of an out-of-circuit three-judge panel has no binding force

on this Court, and the Supreme Court never had occasion to consider the issue of standing

in *Rostker* because it was not raised by the Government before that tribunal.  It is

axiomatic that courts are "not bound by a prior exercise of jurisdiction in a case where

[jurisdiction] was not questioned and it was passed sub silentio." *Doe v. Tangipahoa*

---

[1] Plaintiffs contend that the Government's position would force men to violate the MSSA in
order to have standing.  *See* Opp'n at 5.  This is both inaccurate and irrelevant.  Plaintiffs
Lesmeister and Davis were free to challenge the law at any time, including before they
registered.  And regardless of whether or when they registered, they must identify a concrete
injury that is fairly traceable to the male-only registration requirement in order to establish
standing.  As discussed herein, they have not done so.

*Par. School Bd.*, 494 F.3d 494, 498 (5th Cir. 2007) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)).  And in any event, the *Rostker* district court's ruling is irreconcilable with the Supreme Court's more recent jurisprudence, which makes clear that standing cannot be based on speculation as to future events.  *See Clapper*, 568 U.S. at 401.  Without a showing of more concrete or "certainly impending" harm, plaintiffs Lesmeister and Davis lack standing to bring this suit.  *See id.* at 409.

While plaintiffs also argue that sex discrimination is injurious "in and of itself," *see* Opp'n at 4, they identify no authority that supports this statement.  They cite *Orr v. Orr*, 440 U.S. 268 (1979), in which the Supreme Court held that a man ordered to pay alimony to his ex-wife had standing to challenge state alimony laws that required only men, and not women, to pay alimony.  With respect to the threshold question of *injury*, *Orr* is plainly inapposite.  There, the challenged law imposed an obligation on the plaintiff to pay money he refused to pay; here, by contrast, Lesmeister and Davis have fulfilled their legal obligations and demonstrated no tangible liability or burden, or even a materially different position, as a result of the MSSA's registration requirements.  The standing analysis in *Orr*, moreover, focused not on whether the plaintiff had established an injury but on whether his injury was redressable since the state court, instead of relieving the plaintiff of his obligation to pay, could instead require alimony to be paid by both husbands and wives.  *See id.* at 273 (upholding standing despite possibility that

plaintiff's suit would not obtain the relief sought, because it "holds the only promise of escape from the burden that derives from the challenged statutes").[2]

Nor is it enough to show that plaintiffs believe the registration requirement to be unconstitutional, *see* Opp'n at 5-7.  Rather, they must identify a personal injury "suffered … as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-86 (1982).  Plaintiffs Lesmeister and Davis have failed to do so.  Having registered for the Selective Service, they are not subject to any penalties or adverse actions, and they have not demonstrated any other actual or imminent injury arising from the fact that only men are required to register.  Accordingly, they have failed to establish standing to bring this suit.

### B.      NCFM Has Failed to Demonstrate Associational Standing.

Plaintiffs' contention that NCFM has associational standing to sue on behalf of its members, including plaintiff Davis, is likewise incorrect.  As plaintiffs acknowledge, associational standing requires the associational plaintiff to "make specific allegations establishing that at least one identified member . . . suffered or would suffer harm."

---

[2] Plaintiffs also cite dicta from an earlier ruling in the instant case, in which the Ninth Circuit opined that "[f]or purposes of standing's *redressability inquiry*, the injuries [NCFM] and Lesmeister allege could be addressed either by extending the burden of registration to women or by striking down the requirement for men."  Opp'n at 4 (citing *Nat'l Coal. for Men v. Selective Serv. Sys.* ("*NCFM*"), 640 F. App'x 664, 666 (9th Cir. 2016)) (emphasis added).  Again, however, this analysis goes only to redressability; it says nothing about whether plaintiffs have alleged a cognizable injury in the first place.

5

*Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009).  But as demonstrated above,

plaintiff Davis has failed to establish standing, and the amended complaint fails to

identify any other member of NCFM who has standing to sue in his own right.  NCFM

has therefore failed to establish associational standing.

**II.     Plaintiffs Have Failed to State a Claim Upon Which The Court Can Grant
        Relief.**

Even if the Court concludes that plaintiffs have standing, it should dismiss this suit

in light of the substantial deference that is due to Congress and the Executive Branch in

decisions concerning the composition of the military.  *Rostker*, 453 U.S. at 64-66;

*Gilligan v. Morgan*, 413 U.S. 1, 10 (1973).  Although military policies regarding women

in combat have changed since *Rostker*, that decision remains binding Supreme Court

precedent, and is particularly pertinent inasmuch as it sets forth the longstanding

principle of judicial deference to the political branches on military matters.  *See* Mot. at

17-21.

Such deference is especially appropriate here, where the MSSA's registration

requirements are currently under close review by the political branches.  As discussed in

greater detail in the Government's motion, Congress has created a national commission

to review the Selective Service registration system, including whether registration should

be expanded to include women.  2017 National Defense Authorization Act ("2017

NDAA"), Pub. L. No. 114-328 §§ 551-557; Mot. at 8.  As directed by Congress, the

Secretary of Defense has already submitted a report to the Commission "on the current

and future need for a centralized registration system," including the impact of expanding

registration to include women, and other tasked agencies and officials are required to

submit recommendations for reform of the Selective Service process before the end of

this year.  *See* Mot. at 8-9 and Exhibit B (DoD report) (ECF No. 63-2).  The Commission

will then conduct its own review and report its recommendations to Congress and the

President.  Mot. at 9; Pub. L. No. 114-328 § 555(e)(1).  In short, it is beyond dispute that

Congress and the Executive Branch are actively engaged with the issues at the heart of

this suit and are seriously considering whether the Selective Service registration

requirement should be extended to women.

Plaintiffs' only response is to argue that deferring to Congress is inappropriate

because the Ninth Circuit has ruled that this case is ripe.  Opp'n at 8-10.  However, the

question of ripeness is distinct from the question of whether, under the deferential

standard set forth in *Rostker*, the Court should allow the political branches to address the

significant military and policy issues raised by plaintiff's suit.  The answer to that

question is clearly a resounding "yes."  Consistent with a long line of Supreme Court

precedent, including but not limited to *Rostker*, courts must be "particularly careful not to

substitute [their] judgment of what is desirable for that of Congress, or [their] own

evaluation of evidence for a reasonable evaluation by the Legislative Branch."  *Rostker*,

453 U.S. at 68.  Granting plaintiffs the relief they seek would impermissibly deprive

Congress and the Executive of their prerogative—now reinforced by a legislative

mandate—to evaluate the impact of recent changes on the needs of the Selective Service.

Mot. at 18-21.  *See Gilligan*, 413 U.S. at 10 ("The complex, subtle, and professional

decisions as to the composition, training, equipping, and control of a military force are

essentially professional military judgments, subject always to civilian control of the

Legislative and Executive Branches."); *see also Schlesinger v. Ballard*, 419 U.S. 498,

510 (1975) ("The responsibility for determining how best our Armed Forces shall attend

to [the] business [of fighting wars] rests with Congress . . . and with the President.").  The

Court should defer to their expertise and let them do their work.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this action in its entirety.


Date: November 20, 2017                    Respectfully submitted,

                                           CHAD A. READLER
                                           Principal Deputy Assistant Attorney General

                                           ANTHONY J. COPPOLINO
                                           Deputy Director, Federal Programs Branch

                                            */s/ Lynn Y. Lee*
                                           LYNN Y. LEE (Cal. Bar #235531)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Avenue NW
                                           Washington, D.C. 20530
                                           Tel: (202) 305-0531
                                           E-mail: lynn.lee@usdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017, I electronically filed a copy of the foregoing.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

   */s/ Lynn Y. Lee*        

LYNN Y. LEE
