# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | |
|---|---|
| NATIONAL COALITION FOR MEN; ANTHONY DAVIS; AND JAMES LESMEISTER, Individually and on behalf of others similarly situated, | Civil Action No. 4:16−cv−03362 |
| PLAINTIFFS, | Honorable Gray H. Miller |
| v. | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| SELECTIVE SERVICE SYSTEM; LAWRENCE G. ROMO, as Director of SELECTIVE SERVICE SYSTEM; and DOES 1 through 50, Inclusive, | |
| DEFENDANTS. | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs National Coalition For Men ("NCFM"), James Lesmeister ("Lesmeister"), and Anthony Davis ("Davis") (together, "Plaintiffs"), respectfully move this Court for an Order granting summary judgment in their favor on their claims in their First Amended Complaint that the sex discrimination in the Military Selective Service Act ("MSSA") requiring only males to register for the draft violates Plaintiffs' and other men's rights under the equal protection clause of the Fifth Amendment to the United States Constitution.

1

In support of this Motion, Plaintiffs are filing a Memorandum of Points and Authorities herein, and separately filing a Separate Statement of Undisputed Facts, and a Lodgment of Declarations and Evidence, which includes the declarations of Marc E. Angelucci, NCFM (by President Harry Crouch), Lesmeister, and Davis and Request for Judicial Notice.  Plaintiffs assert that there is no genuine issue of disputed material fact and that they are entitled to summary judgment as a matter of law on their first cause of action for violation of equal protection, because:

(1) Plaintiffs are, or represent, male citizens of the United States who are of draft age and qualify for the draft, or were such when this lawsuit was filed;

(2) The MSSA requires Plaintiffs to register for the draft because they are male, and subjects them to penalties for failure to register, but does not require women to register or subject them to penalties for failure to register; and,

(3) Men and women can be and generally are similarly situated with regard to the MSSA, and the MSSA's sex discrimination is not carefully tailored to an important government interest.

Accordingly, Plaintiffs respectfully request an order for summary judgment in their favor and declaring the MSSA's sex discrimination unconstitutional.

Respectfully Submitted.

Law Office of Marc E. Angelucci

Date: _August 21, 2018_          By: *Marc Angelucci*
                                      Marc E. Angelucci, Esq.
                                      Attorney for Plaintiffs
                                      NCFM, Lesmeister, and Davis

2

# TABLE OF CONTENTS

I. . SUMMARY OF ARGUMENT 5.

II. ISSUES 6..

III. FACTS 6..

IV. ARGUMENT 10.

    A. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT
    AS TO WHETHER THE MSSA VIOLATES PLAINTIFFS'
    RIGHTS TO EQUAL PROTECTION UNDER THE FIFTH
    AMENDMENT TO THE UNITED STATES CONSTITUTION. 11.

        1. Plaintiffs are and/or represent male citizens of the United
        States who are of draft age and qualify for the draft, or
        were of draft age and qualified for the draft when this
        lawsuit was filed. 12.

        2. The MSSA requires Plaintiffs to register for the Selective
        Service because they are male, and subjects them to penalties
        for failure to register, but does not require women to register
     . 50 U.S.C. § 462(a).  None of these requirements apply to women. 13.

        3. Men and women can be, and generally are, similarly situated
        with regard to the MSSA, and the sex discrimination in the
        Selective Service Act does is not carefully tailored to an
        important government interest. 13.

    B. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
    ON THEIR FIRST CAUSE OF ACTION FOR VIOLATION OF
    EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO
    THE UNITED STATES CONSTITUTION. 21.

V. CONCLUSION. 24.

# TABLE OF CITATIONS

Page

CASES

*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160     7.

*City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432 (1985)     21.

*Frontiero v. Richardson*, 411 U.S. 677 (1973)     21.

*Heckler v. Mathews*, 465 U.S. 728 (1984).     24.

*Kirchberg v. Feenstra*, 450 U.S. 455 (1981)     21.

*Personnel Admin. of Massachusetts v. Feeney*, 442 U.S. 256 (1979).     22.

*Rostker v. Goldberg* 453 U.S. 57 (1981)     5, 9, 13-15, 19.

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000)     20.

*United States v. Virginia,* 518 U.S. 515 (1996)     21.

*Wengler v. Druggist Mutual Ins. Co.*, 446 U.S. 142 (1980)     22.

*Woods v. Horton* (2008) 167 Cal.App.4th 658     7.

STATUTES

50 U.S.C. § 453     10, 13, 14, 22.

50 U.S.C. § 462(a).     11, 13.

CONSTITUTIONAL PROVISIONS

United States Constitution, Fifth Amendment     1, 13, 19, 23.

RULES

Federal Rule of Civil Procedure 56     1.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.

### <u>SUMMARY OF ARGUMENT</u>

In *Rostker v. Goldberg,* 453 U.S. 57 (1981) (*Rostker*), several men challenged the constitutionality of the Military Selective Service Act's ("MSSA") requiring only men to register.  The lower courts ruled in favor of the plaintiffs, but in a sharply divided decision, the Supreme Court held that men and women are "not similarly situated" with regard to the MSSA because women are not allowed in combat, and thus equal protection analysis does not apply.  *Id.,* at 58.

Since then, everything has changed.  In 2012, the military started allowing women in thousands of previously-closed combat roles.  The Department of Justice then lifted *all* gender-based restrictions in combat.  And recently, the Pentagon issued a detailed report fully recommending that women be required to register for the MSSA, along with men.

In this case, there is no genuine dispute as to material fact.  The MSSA requires Plaintiffs and other men to register for the draft because they are male, and subjects them to penalties for failure to register, but does not require women to register or subject them to the same penalties.  Men and women can be and generally are similarly situated regarding the MSSA, and the MSSA's sex discrimination is not carefully tailored to an important government interest.  Therefore, Plaintiffs respectfully request a summary judgment in their favor.

## II.

## <u>ISSUES</u>

4.  Whether there is a triable issue of material fact as to whether the MSSA violates Plaintiffs' rights to Equal Protection under the Fifth Amendment to the United States Constitution.

5.  Whether Plaintiff are entitled to summary judgment under Count One: Violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution.

## IV.

## <u>FACTS</u>

James Lesmeister ("Lesmeister") is a male United States citizen, born on January 12, 1995, and is currently 23 years old. (Leismeister Decl., ¶ 1.) He is a resident of Pearland, Texas. (Leismeister Decl., ¶ 2.) He is registered for the military draft as is required of him as a male. (Leismeister Decl., ¶ 3.) He is not a member of the military or a student at military academies or otherwise exempt from the draft. (Leismeister Decl., ¶ 5.) He meets all qualifications for MSSA registration. (Leismeister Decl., ¶ 6.)

Anthony Davis ("Davis") is a male United States citizen, born on December 4, 1997, and is currently 20 years old. (Davis Decl., ¶ 1.) He is a resident of San Diego, California. (Davis Decl., ¶ 2.) He has registered for the military draft as is required of him as a male. (Davis Decl., ¶ 3.) He is not a member of the military or a student at military academies or otherwise exempt

from the draft.   (Davis Decl., ¶ 5.)   He meets all qualifications for MSSA registration.   (Davis Decl., ¶ 6.   He has been a paid NCFM member since September 23, 2016.  (Davis Decl., ¶ 7.)

NCFM is a non-profit, 501(c)(3) educational and civil rights corporation organized under the laws of the State of California and of the United States. (NCFM Decl., ¶ 1.)   NCFM has members in every state of the United States. (NCFM Decl., ¶ 2.)  NCFM is registered with the Combined Federal Campaign for non-profit organizations.  (NCFM Decl., ¶ 3.)  NCFM was established in 1976 to examine how sex discrimination adversely affects males in military conscription, child custody laws, parenting rights, domestic violence services, family law, paternity laws, criminal sentencing, public benefits, education, and more.  (NCFM Decl., ¶ 4.)   For example, NCFM assisted the California Legislature in enacting legislation to protect men from paternity fraud and has represented battered men in a landmark appellate case overturning unconstitutional laws that discriminated against male victims of domestic violence.  See, *Woods v. Horton* (2008) 167 Cal.App.4th 658.  (NCFM Decl., ¶ 4.)  NCFM members were the prevailing appellants and attorney in the landmark California Supreme Court case which held that men, women, people of color, gays and lesbians, and other groups that California businesses discriminated against do not have to first assert their right to equal treatment to an offending business to have standing to sue under California's Unruh Civil Rights Act.  See, *Angelucci v. Century Supper Club* (2007) 41 Cal.4th

160,  (NCFM Decl., ¶ 4.)  NCFM has members who are males ages 18-25 and meet all other MSSA qualifications.  (NCFM Decl., ¶ 5.)

The MSSA requires all male United States citizens and male immigrant non-citizens between the ages of 18 and 26 to register with the MSSA within 30 days of their 18th birthday.  50 U.S.C. § 453(a).  After they register, men must notify the Selective Service within 10 days of any changes to any of the information provided on the registration card, including a change of address, until January 1 of the year they turn 21 years of age.  Failure to comply with the MSSA can subject a man to five years in prison, a $10,000 fine, denial of federal employment, and/or denial of federal student aid.  50 U.S.C. § 462(a).  None of these requirements or penalties apply to women.

On January 12, 2013, United States Secretary of Defense Leon E. Panetta and Chairman of the Joint Chiefs of Staff Martin E. Dempsey issued a memorandum officially rescinding the ban on women in combat (hereinafter, "2013 Memorandum").  (Exhibit 1.)  The 2013 Memorandum directed that integration of women into combat positions be completed "as expeditiously as possible," no later than January 1, 2016, and gave the military departments until May 15, 2013 to submit a detailed plan for the implementation of this directive.  (Exhibit 1.)  The 2013 Memorandum provides, *inter alia,* that in 2012 the military opened over 14,000 positions previously-closed to women, that throughout 2012, combat roles continued opening for women, and that by January 2013, thousands

of women had served alongside men in combat roles in Iraq and Afghanistan. (Exhibit 1.)

On December 4, 2015, the United States Department of Defense wrote a letter to Congress providing that it "intends to assign women to previously closed positions and unit across all Services and U.S. Special Operations Command." (Exhibit 2.)   The Selective Service's website describes this letter as follows: "LATEST UPDATE: Defense Secretary Ash Carter announced on December 3, 2015, the Department of Defense will lift all gender-based restrictions on military service starting January 2016."  (Exhibit 3.)

On March 17, 2017, the Department of Defense issued a 37-page report titled "Report on the Purpose and Utility of a Registration System for Military Selective Service" that supports requiring women to register for the MSSA (hereafter "Pentagon Report").  (Exhibit 4.)

The Pentagon Report provides that on December 3, 2015, Secretary of Defense Ashton Carter opened "all military occupational specialties to women and removed all final restrictions on the service of women in combat," and that "qualified women were eligible to participate in all career fields, in all duty positions, at all echelons of the Armed Forces."   (Exhibit 4, p. 15.)

The Pentagon Report also provides that in December 2015, the Department of Defense advised Congress that the impending change "further alters the factual backdrop" underpinning *Rostker* but took no further stance on the legal issues raised by Secretary Carter's decision to open all military positions to women.

9

(Exhibit 4, p. 15.)  The Pentagon Report provides that in December 2016,

Secretary of Defense Carter stated publicly:

> While I strongly support our all-volunteer approach and do not
> advocate returning to a draft, I do think it makes sense for
> women to register for selective service at this time. With all
> combat positions now open to women, we need to have access
> to 100-percent of America's population for our all-volunteer
> force to be able to recruit the most qualified individuals and
> remain the finest fighting force the world has ever known.

(Exhibit 4, p. 15.)

**The Pentagon Report also describes the injustice to male citizens of
being required to register and face stiff penalties when women do not.**
(Exhibit 4, p. 37.)

The report concludes that continuing to require only men to register for the

MSSA would constrain success by restricting the database of professions, skills,

academic degrees, and licenses, useful even for a voluntary recruitment system,

and that this would "prove an unfortunate omission."  (Exhibit 4, p. 37.)

Defendants admit that their own website reads: "The U.S. came close to

drafting women during World War II, when there was a shortage of military

nurses.  However, there was a surge of volunteerism and a draft of women nurses

was not needed."  (See, Exhibits 5, 6 and 7.)  Even the Pentagon Report indicates

the draft does not have to be for purposes of combat."  (Exhibit 4, p. 16.)

# V.

# ARGUMENT

Under the MSSA, male United States citizens and male immigrant non-citizens between the ages of 18 and 26 are required by law to register with the MSSS within 30 days of their 18th birthday.  50 U.S.C. § 453(a).  After they register, men must notify the SSS within 10 days of any changes to any of the information provided on the registration card, including a change of address, until January 1 of the year they turn 21 years of age.  Failure to comply with the MSSA can subject a man to five years in prison, a $10,000 fine, and denial of federal employment or student aid.  50 U.S.C. § 462(a).  None of these requirements or penalties apply to women.

Plaintiffs maintain the following: (1) There is no genuine dispute of any material fact as to whether the MSSA violates Plaintiffs' rights to equal protection under the Fifth Amendment to the United States Constitution; and, (2) Plaintiffs are entitled to summary judgment under their First Cause of Action of Violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution.

## A.   THERE IS NO GENUINE DISPUTE OF MATERIAL FACT AS TO WHETHER THE MSSA VIOLATES PLAINTIFFS' RIGHTS TO EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

In a motion for summary judgment, the plaintiffs have the initial burden of proof based on a preponderance of the evidence standard.  Accordingly, Plaintiffs

11

now assert the following elements to establish a prima facie case for their claim of violation of Equal Protection under the Fifth Amendment to the United States Constitution: (1) Plaintiffs are and/or represent male citizens of the United States who are of draft age and qualify for the draft or were of draft age and qualified for the draft when this lawsuit was filed.  (2) The MSSA requires Plaintiffs to register for the Selective Service because they are male, and subjects them to penalties for failure to register but does not require women to register or subject them to penalties; (3) Men and women can be, and generally are, similarly situated regarding the MSSA, and the MSSA's sex discrimination is not carefully tailored to an important government interest.  As we will now show, there is no triable issue of material fact in this case.

1. **Plaintiffs are and/or represent male citizens of the United States who are of draft age and qualify for the draft or were of draft age and qualified for the draft when this lawsuit was filed.**

As has already been set forth in the Facts section above and in the Declarations filed herewith, Plaintiffs are men, or represent men, who qualify for MSSA registration and have standing in this case.  The Ninth Circuit Court of Appeal, as well as this Honorable Court, both held Plaintiffs pled enough facts for standing.  (See, Memorandum by Ninth Circuit Court of Appeal, entered February 19, 2016; Memorandum Opinion and Order from United States District Court, Southern District of Texas, Houston Division, entered April 6, 2018.)  Since then, no facts have arisen or been asserted by Defendants that contradict the allegations in the operative Complaint relating to standing.

Associational standing exists where an organization shows: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (citation omitted). Here, NCFM has met that burden.

**2. The MSSA requires Plaintiffs to register for the Selective Service because they are male, and subjects them to penalties for failure to register, but does not require women to register or subject them to penalties.**

As set forth above, the MSSA requires all male United States citizens and male immigrant non-citizens between the ages of 18 and 26 to register with the MSSS within 30 days of their 18th birthday.  50 U.S.C. § 453(a).  After they register, men must notify the SSS within 10 days of any changes to any of the information provided on the registration card, including a change of address, until January 1 of the year they turn 21 years of age.  Failure to comply can subject men to five years in prison, a $10,000 fine, and denial of federal employment or student aid.  50 U.S.C. § 462(a).  None of these requirements or penalties apply to women.

**3. Men and women can be, and generally are, similarly situated regarding the MSSA, and the sex discrimination in the Selective Service Act does is not carefully tailored to an important government interest.**

In *Rostker, supra,* 453 U.S. at 59, several men challenged the constitutionality of the MSSA's requiring only men to register.  The lower courts ruled in favor of the plaintiffs, finding the sex discrimination violated the men's

constitutional right to equal protection under the Fifth Amendment. But in a sharply divided Supreme Court decision in which Justice Thurgood Marshall wrote a vigorous dissent joined by Justices William Brennan and Byron White,[1] the Court held the gender discrimination in the MSSA does not violate men's rights to equal protection because women are not allowed in any combat role, therefore men and women are not similarly situated regarding the MSSA. Specifically, the majority in *Rostker* held:

> Since women are excluded from combat service by statute or military policy, men and women are simply not similarly situated for purposes of a draft or registration for a draft.

*Supra,* 453 U.S. at 58.

Since that time—almost 40 years ago, the situation and much of the world has significantly changed, with women and men, especially in the United States, increasingly being viewed as equals. For example, and especially germane to women's role in the U.S. Military, in February 2012, the military opened over 14,000 positions previously closed to women, and combat positions continued to open. (Exhibit 1, p. 1.) Throughout 2012, combat roles continued opening for women, and by January 2013, thousands of women have served alongside men in combat roles in Iraq and Afghanistan. (Exhibit 1.) On January 12, 2013, Secretary of Defense Leon E. Panetta and Chairman of the Joint Chiefs of Staff

---

[1] Justice Marshall's lengthy dissent argued not only that the MSSA violated men's rights to equal protection, but that the majority decision "places its imprimatur on one of the most potent remaining public expressions of 'ancient canards about the proper role of women.'"

Martin E. Dempsey issued the 2013 Memorandum rescinding the ban on women in combat, directing that integration of women into combat positions be completed "as expeditiously as possible" and no later than January 1, 2016.  (Exhibit 1.)  On December 34, 2015, the United States Department of Defense wrote a letter to Congress stating that it "intends to assign women to previously closed positions and unit across all Services and U.S. Special Operations Command."  (Exhibit 2.)  The Selective Service's website describes this letter as follows: "LATEST UPDATE: Defense Secretary Ash Carter announced on December 3, 2015, the Department of Defense will lift all gender-based restrictions on military service starting January 2016."  (Exhibit 3.)

On March 17, 2017, the Department of Defense issued 37-page Pentagon Report supporting a requirement that women register for the MSSA just as men do.  (Exhibit 4.)  The Pentagon Report then explains how things have changed since *Rostker,* and that beginning in 2012, the Department of Defense gradually began to eliminate prohibitions on women in combat, and since then the military opened more than 300,000 new military occupations and duty positions to women, with plans to eliminate all unnecessary gender-based barriers to service.  The report describes how on December 3, 2015, Secretary of Defense Ashton Carter opened *all* military occupational specialties to women and removed all final restrictions on the service of women in combat, and that "qualified women were eligible to participate in all career fields, in all duty positions, at all echelons of the Armed Forces."   (Exhibit 4, p. 15.)  The report provides that in December 2015,

the Department of Defense advised Congress that the impending change "further alters the factual backdrop" underpinning *Rostker*.  The report explains that in 2016, the military appointed the first female Combatant Commander, and that women graduated from the Army's elite Ranger school, served on Navy submarines, and completed Marine Corps Artillery officer's training, as the shift enabled the Department to expand its recruiting reach to the entirety of the American population and to enlist qualified personnel for service in combat occupations. (Exhibit 4, p. 15.)

After describing various viewpoints on women and the draft, the Pentagon Report provides that in December 2016, Secretary of Defense Carter stated publicly:

> While I strongly support our all-volunteer approach and do not advocate returning to a draft, I do think it makes sense for women to register for selective service at this time. With all combat positions now open to women, we need to have access to 100-percent of America's population for our all-volunteer force to be able to recruit the most qualified individuals and remain the finest fighting force the world has ever known.

(Exhibit 4, p. 15.)

The Pentagon Report then gives a detailed analysis into the direct and indirect benefits of expending MSSA registration to women, such as guaranteeing the certain and timely fulfillment of military manpower requirements in a national emergency.  It states: "It would appear imprudent to exclude approximately 50% of the population—the female half—from availability for the draft in the case of a national emergency," and "Future wars may have requirements for skills in non-

16

combat fields in which the percentage of individuals qualified would not be as variable by gender." (Exhibit 4, p. 16.)  Other direct benefits include doubling the name and address data updated monthly and discontinuing the cost of paying commercial vendors for data to generate female leads.  (Exhibit 4, p. 16.)

Indirect benefits described in the Pentagon Report included: (1) reminding our youth of the importance of military, national and public service; (2) conjoining the interests of all American people and the military; (3) signaling to allies and potential enemies that there is an enhanced resolve to defend our nation and its partners, through the commitment and capability of the entirety of our citizenry; and (4) promoting fairness and equity.  (Exhibit 4, pp. 17-18.)

The Pentagon Report further describes the injustice to male citizens of being required to register and face stiff penalties when women do not.  It states:

> In a tactical manifestation of the **inequity inherent in the current system**, men are required to register for selective service as a condition of eligibility for myriad consequential benefits and services at both the federal and state levels. A man who forgets, delays, or fails to register is denied government employment, job training, student loans and grants, a driver's license, and a security clearance, to name but a few.  Even if he has registered, government action on a man's application for benefits and services for which he is eligible often is held in abeyance while his selective service registration is verified with the SSS. Women suffer none of these denials or delays, solely because they are not required to register for the draft, solely because they are . . . women**.** That technical arguments can be applied to justify such differences in treatment is beside the point. **Men are treated differently than their female counterparts, for reasons seemingly grounded in gender; this inequity creates the perception of discrimination and unfair dealing—a tarnish that attaches to the military selective service system writ large.** A man who forgets or

17

neglects to register until after he turns 26, past the age at which registration is required, must show, by a preponderance of the evidence, that his failure was not "knowing and willful". The process for adjudicating the matter can be lengthy—as long as 18 months in some cases. During this period, the man is not eligible for certain federal and state benefits and services. **A requirement for universal registration would place women and men on equal footing.** Each would be required to register; each would be required to verify registration as a prerequisite to receipt of government benefits and services; and each would be subject to the same penalties—the denial of benefits and services—for non-compliance. Restoring the perception and reality of fair and equal treatment for all in the administration of essential federal and state programs is an additional benefit to be derived from extending to women the requirement to register for the draft.

(Exhibit 4, p. 19, emphasis added.)

The Pentagon Report then examines the costs and logistical implications of requirement women to register for the MSSA.  It provides that, while requiring women to register is likely to require an increase in resources, the Selective Service has already developed a five-year, phased implementation plan that would absorb such the increase, and it describes the plan in detail.  (Exhibit 4, pp. 19-20.)

After further evaluating various issues relating to registering women for the draft, the Pentagon Report concludes:

It appears that, for the most part, expanding registration for the draft to include women would enhance further the benefits presently associated with the selective service system. Opening registration to *all* members of the population aged 18-25 – regardless of gender – would convey the added benefit of promoting fairness and equity not previously possible in the process and would comport the military selective service system with our nation's touchstone values of fair and equitable treatment, and equality of opportunity.

18

(Exhibit 4, pp. 35-36.)  It also concludes that continuing to require only men to register would "constrain success" by restricting the database of professions, skills, academic degrees, and licenses, useful even for a voluntary recruitment system, which would "prove an unfortunate omission."  Specifically, it reads:

> A targeted draft in a future war would presumptively focus on highly technical skills in short supply in the labor market as a whole. The percent of individuals qualified in such skills is unlikely to be as variable by gender as are the combat MOSs. Accordingly, targeting a draft to 50% of the available population—males only—would severely constrain success.

(Exhibit 4, p. 37.)

Accordingly, there is no longer any basis to find men and women cannot be similarly situated regarding the MSSA.  The conditions upon which *Rotsker* found them similarly situated no longer exist.  When *Rotstker* was decided, women were not allowed in *any* military combat roles and innumerable non-military roles in society.  Since that time, women have increasingly served in military combat roles and most, if not all, non-military roles in America.  Now, the Department of Defense has rescinded all restrictions on women in combat and strongly recommend women be required to register for the MSSA.  Therefore, equal protection analysis under the Fifth Amendment to the United States Constitution applies to the MSSA.

Any equal protection analysis of the MSSA uses a heightened, intermediate scrutiny test of whether the sex discrimination in the MSSA is carefully tailored to an important government interest.  Clearly, it is not, for all the same reasons set

forth above.  In fact, the Pentagon Report makes it clear there is no longer any reason to require only men but not women to register.

Frankly, Plaintiffs are mystified why Defendants, which are fellow federal government agencies to the United States Department of Defense, are utilizing their own and this court's valuable time and other resources, to contest this case and their brethren at the Department of Defense given all of the above.  Plaintiffs' puzzlement is increased given that Defendants have effectively admitted, as set forth below, that the MSSA does not have to be for combat purposes and can be used to register people – men and women – for non-combat roles.

In fact, Defendants admit that their own website reads: "The U.S. came close to drafting women during World War II, when there was a shortage of military nurses.  However, there was a surge of volunteerism and a draft of women nurses was not needed."  (See, Exhibit 3; Exhibit 5, and Exhibit 6.)  This is an admission by Defendants that the MSSA does not have to be for purposes of combat, and that MSSA can register people for purposes other than combat. Arguably, even at the time of *Rostker,* the sex discrimination was not carefully tailored to an important government interest, because women could still be drafted for non-combat roles.  Even the Pentagon Report indicates the draft does not have to be for purposes of combat."  (Exhibit 4, p. 16.)  As the Pentagon Report reads:

> Future wars may have requirements for skills in non-combat fields in which the percentage of individuals qualified would not be as variable by gender. A broader, deeper registrant pool would enhance the ability of the SSS to provide manpower to the DoD in accordance with its force needs. This is particularly

> important because future wars may have requirements for skills
> in non-combat fields in which the percentage of individuals
> qualified would not be as variable by gender.

(Exhibit 4, p. 17.)

Now that women are allowed in all combat roles, however, it is indisputable that the sex discrimination in the MSSA does not meet intermediate scrutiny analysis. The MSSA's men-only draft registration, may not even meet a rational basis test.

Therefore, for all the foregoing reasons, there is no triable issue of material fact as to whether the MSSA violates Plaintiffs' rights to equal protection under the Fifth Amendment to the United States Constitution.

## B.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST CAUSE OF ACTION FOR VIOLATION OF EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

There being no triable issue of material fact, Plaintiffs are entitled to summary judgment on their first cause of action for violation of equal protection under the Fifth Amendment to the United States Constitution, Plaintiffs have established that the MSSA discriminates against Plaintiffs based solely on their sex.

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). Classifications based upon sex, like classifications based upon race,

alienage, or national origin, are "inherently suspect" and subject to heightened scrutiny review. *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973) (statute that allowed male members of the military to receive certain benefits if they were married but did not give the same automatic benefits to women in the military, could not withstand strict scrutiny).[2]

"Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification" for that action.'" *United States v. Virginia,* 518 U.S. 515, 531 (1996). The gender discrimination scheme must be examined under the "heightened" scrutiny mandated by *Craig v. Boren*, 429 U.S. 190 (1976). Under this test, a gender-based classification cannot withstand constitutional challenge unless the classification is substantially related to the achievement of an important governmental objective. *Kirchberg v. Feenstra*, 450 U.S. 455, 459, 459-460 (1981). The party defending the challenged classification carries the burden of demonstrating both the importance of the governmental objective it serves and the substantial relationship between the discriminatory means and the asserted end. *Wengler v. Druggist Mutual Ins. Co.*,

---

[2] Notably *Frontiero* ruled that the Equal Protection Clause of the United States Constitution requires the U.S. military to provide its female members with the same housing and medical benefits as it provides its male members. *Frontiero* discusses America's long and unfortunate history of sex discrimination, *Id.* at 684 – 687. Justice William J. Brennan Jr., in announcing the judgment of the Court, compared the military's unequal treatment of men and women regarding housing and medical benefits to be another example of this country's unfortunate tradition of treating people unequally based on their sex, finding that "Traditionally, such discrimination was rationalized by an attitude of "romantic paternalism" which, in practical effect, put women, not on a pedestal, but in a cage." *Id.* at 684.

446 U.S. 142, 151 (1980). As a result, the Government must demonstrate that the gender-based classification it employs bears "a close and substantial relationship to [the achievement of] important governmental objectives," *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979).

Here, the government bears the burden of proving that excluding women from Selective Service registration, and requiring only men to register, is closely and substantially related to an important governmental purpose. It is not the decision to register men that must be shown to be necessary to further the goal of raising an army, but the decision to register *only* men.

As is already set forth above, under the MSSA, male U.S. citizens and male immigrant non-citizens between the ages of 18 and 26 are required by law to register with the MSSS within 30 days of their 18th birthday.  50 U.S.C. § 453(a). They must continuously notify the SSS of their whereabouts or other changes to the information on their registration card until January 1 of the year they turn 21 years of age.  Men who fail to register can be imprisoned, fined, and denied federal employment and financial aid.

These penalties are not unrealistic.  For example, in *Elgin v. Bush,* 641 F.3d 6 (1st Cir. 2011), three men were terminated from their federal employment for failing to register for the MSSA when they were young.  One of them had been homeless most of his life including during the years he was required to register. This is a clear example of indisputable, concrete harm that the MSSA can unfairly inflict directly upon men but not on women.

"Discrimination itself, by perpetuating 'archaic and stereotypic notions' . . . can cause serious noneconomic injuries to those persons who are personally denied equal treatment." *Heckler v. Mathews*, 465 U.S. 728, 739-740 (1984).  The sex discrimination in the MSSA violates Plaintiffs' and other men's rights to equal protection under the Fifth Amendment to the United States Constitution.  Therefore, Plaintiffs are entitled to summary judgment in their favor on Count One (first cause of action) for violation of equal protection.

## VI.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs request summary judgment in their favor.  Plaintiffs take no position on whether the solution should be to eradicate the MSSA's mandatory registration requirements, or to require both sexes to register.  Plaintiffs' position is that requiring only men but not women to register is unconstitutional and should be declared as such by this Honorable Court.

Respectfully Submitted.

Law Office of Marc E. Angelucci

Date:  August 21, 2018            By:  *Marc Angelucci*
                                        Marc E. Angelucci, Esq.
                                        Attorney for Plaintiffs
                                        National Coalition For Men, James
                                        Lesmeister, and Anthony Davis