# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| NATIONAL COALITION FOR MEN and JAMES LESMEISTER, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SELECTIVE SERVICE SYSTEM; DONALD M. BENTON as Director of Selective Service System; and Does 1 through 50, inclusive, <br><br> Defendants. | No. 4:16-cv-3362 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL RELIEF FROM JUDGMENT (ECF NOS. 90, 91)**

## NATURE AND STAGE OF THE PROCEEDINGS

The Court entered final judgment in this case on February 22, 2019. ECF No. 88.

## ISSUE PRESENTED

Should the Court grant Plaintiffs' motion for relief from the Final Judgment for mistake, inadvertence, surprise, or excusable neglect? Fed. R. Civ. P. 60(b)(1).

\*\*\*

In their motion for summary judgment, the National Coalition for Men (NCFM), James Lesmeister, and Anthony Davis asked this Court to "declare" the male-only registration requirement of the Military Selective Service Act (MSSA) unconstitutional. Pl.'s Mot. For S.J., ECF No. 73, at 24. Plaintiffs now seek to reopen the Final Judgment pursuant to Civil Rule 60(b)(1) so the Court can either enter an injunction or give leave to Plaintiffs to file a renewed motion for summary judgment seeking such relief, even though the Court already expressly denied an injunction. Plaintiffs' motion should be denied because they have not met the standard for reopening the Final Judgment. Their prior pleadings demonstrate that they deliberately sought declaratory relief, not an injunction. The Court cannot reopen the case under Rule 60(b)(1) based solely on counsel's carelessness or ignorance of the law. *See Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993).

Although the Court should not reach Plaintiffs' request for injunctive relief, it is similarly lacking in merit. Despite Plaintiffs' improper attempt to "supplement" the motion, ECF No. 91, Plaintiffs have not shown an injunction is appropriate. Plaintiffs' request raises serious practical and separation-of-powers concerns, and Plaintiffs failed to

1

show irreparable harm sufficient to warrant an injunction. Defendants should be given an opportunity to appeal the Final Judgment before any changes to Selective Service are made. The Final Judgment already accommodates these concerns, and should not be disturbed. Accordingly, Plaintiffs' motion should be denied.

## I. Plaintiffs Are Not Entitled to Relief Under Rule 60(b)(1).

Plaintiffs assert that they "believed in good faith that their motion incorporated their request for injunctive relief" because they moved for relief on Count I of the complaint, and the complaint requested "both injunctive and declaratory relief." Pl.'s Mot., ECF No. 90, at 9. As such, their counsel "neglected to specifically brief and plead the elements for injunctive relief, and assumed that the per se injuriousness established in the Motion would suffice for injunctive relief." *Id.* at 11. In light of the Court's Final Judgment, Plaintiffs aver that they now understand an injunction "should have been specifically pled" and that a "permanent injunction requires irreparable harm and inadequate legal remedy." *Id.* Plaintiffs therefore seek "partial relief from the Judgment" under Rule 60(b)(1) "insofar as it denies … injunctive relief." *Id.* Such assertions fall well short of the threshold for according relief under Rule 60(b)(1).

Rule 60(b)(1) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … mistake, inadvertence, surprise, or excusable neglect." This is "extraordinary relief," and the burden is on Plaintiffs to "make a sufficient showing of unusual or unique circumstances justifying such relief." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985). The criteria set forth by the rule are "not wholly open-ended. 'Gross carelessness is not enough.

Ignorance of the rules is not enough, nor is ignorance of the law.'" *Id.* (quoting 11 Wright & Miller, Federal Practice and Procedure § 2858 (footnotes omitted)).

In the operative complaint, Plaintiffs requested both a declaratory judgment and an injunction in a "prayer for relief," separate from their allegations in Count I. First Am. Compl., ECF No. 60, at 13. But Plaintiffs' motion for summary judgment never mentioned injunctive relief. Rather, Plaintiffs explicitly asked the Court to "declare" the MSSA unconstitutional. Pl.'s Mot. For S.J., ECF No. 73, at 24. Plaintiffs did not reply to Defendants' express opposition to an injunction in their cross-motion for summary judgment. Defs.' Mot. For Stay & S.J., ECF No. 80, at 23-24. Consequently, the Court denied an injunction. Mem. Op., ECF No. 87, at 19 ("Although Plaintiffs' complaint requests injunctive relief, Plaintiffs have not briefed the issue and their summary judgment motion only requests declaratory relief.") Plaintiffs "ma[de] a considered choice" to pursue only a declaratory judgment, and "cannot be relieved of such a choice … because hindsight seems to indicate … that, as it turns out [the] decision was probably wrong." *In re Pettle*, 410 F.3d 189, 193 (5th Cir. 2005) (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang,* 248 F.3d 1, 6 (1st Cir. 2001)).

Plaintiffs do not—and cannot—assert that it implicitly received equitable relief the Court expressly denied. Nor can Plaintiffs be excused for confusion over basic principles of equity. An injunction "does not follow from success on the merits as a matter of course," as Plaintiffs assumed. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 32 (2008). That is because "the balance of equities and consideration of the public interest [] are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent."

3

*Id.* Accordingly, a plaintiff must "carr[y] the burden of persuasion" on the four-factor injunction test by "a clear showing" for a district court to award the "extraordinary and drastic remedy" of an injunction. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). If Plaintiffs assumed the Court would grant injunctive relief based on the "per se injuriousness" of their equal protection claim, that is not a basis to reopen the judgment under Rule 60(b)(1). Indeed, "a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court." *Edward H. Bohlin Co.*, 6 F.3d at 357.

Of course, courts have "long presumed that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008). But one of the salient differences between a declaratory judgment and an injunction is that "the Government [remains] free to continue to apply the statute" pending appellate review when there is not "an injunctive sanction against the application of the statute by the Government[.]" *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963); *see also Sands v. Wainwright*, 491 F.2d 417, 422 (5th Cir. 1973) (quoting *Kennedy*'s holding regarding the government's freedom to continue applying a statute while it appeals a declaratory judgment finding a statute unconstitutional); *Manrique Carreno v. Johnson*, 899 F. Supp. 624, 628 (S.D. Fla. 1995) ("Absent an injunctive sanction, a district court's declaration that a statute is unconstitutional does not bar the government from continuing to apply the

4

statute pending review by the Court of Appeals and the United States Supreme Court.").[1] Until appellate rights are exhausted, any litigation over Defendants' compliance with the Final Judgment would be premature.

There is no sound reason under Rule 60(b)(1) for reopening the Final Judgment's ruling on injunctive relief. As such, the Court should deny Plaintiffs' motion.

## II.     An Injunction Is Not Warranted At This Time

Even if Rule 60(b)(1) did not stand in the way, the Court should still demur from awarding an injunction or granting leave for Plaintiffs to move for one. The Final Judgment gives Plaintiffs all the relief they could possibly demand at this stage, while giving Defendants an opportunity to appeal the Final Judgment.

To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs did not address all of these

---

[1] The Court in *Kennedy* reached this conclusion in determining whether one of the appellees' cases should have been heard by a three-judge district court, rather than a single district judge—a determination that was relevant under a since-repealed statute, which provided that a three-judge district court was necessary for issuing certain forms of injunctive relief. *See* 372 U.S. at 152-53 (citing 28 U.S.C. § 2282). The relevant discussion of the distinction between declaratory and injunctive relief during the pendency of an appeal, however, did not turn on the interpretation of the since-repealed statute. *See id.* at 155.

factors until filing their "supplemental points and authorities" five days before Defendants' response to Plaintiffs' Rule 60(b)(1) motion was due. Supp. Memo. of Points & Authorities, ECF No. 91. Plaintiffs did not ask the Court to modify the submission date of their Rule 60(b)(1) motion or for leave to supplement its brief, and did not seek concurrence from Defendants before filing, in violation of this Court's local rules and practice guidelines. *See* S.D. Tex. L.R. 7.1(D); Judge Gray H. Miller Court Procedures, § 6(A)(1). The Court, therefore, could simply strike the supplemental brief. But even if Plaintiffs met the standard of Rule 60(b)(1) and properly addressed all of the injunction factors, they would still not be entitled to an injunction.

First, Plaintiffs have not demonstrated irreparable harm, despite the Court's finding that they alleged sufficient injury-in-fact to establish standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (noting that "even if the complaint present[s] an existing case or controversy," that is not necessarily "an adequate basis for equitable relief."). Both named plaintiffs are registered, and neither avers that he has taken, or will imminently take, actions that could lead to civil or criminal penalties related to registration status. Davis Decl., ECF No. 73-1, Ex. 2; Lesmeister Decl., ECF No. 73-1, Ex. 3. There is no evidence that the rights of NCFM's members are being violated on a "day-to-day basis" simply by being registered. Pl.'s Mot. 12-13. This sort of "[s]peculative injury is not sufficient" to "make a clear showing of irreparable harm." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

Plaintiffs' reliance on the district court decision in *Rostker v. Goldberg*, Pl.'s Mot. 12, to show irreparable harm is misplaced because the Supreme Court immediately

6

stayed that injunction pending appeal. *Rostker v. Goldberg*, 448 U.S. 1306, 1311 (1980) (Brennan, J., in chambers). Otherwise, Plaintiffs assert that the offensiveness of discrimination, on its own terms, creates irreparable harm. But mere offense at government action is not sufficient to ground Article III standing, much less irreparable harm. *See Allen v. Wright*, 468 U.S. 737, 752–54 (1984); *In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008) (Kavanaugh, J.) ("'By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy' from knowing that the Government is following constitutional imperatives, 'that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998))).

The balance of equities and the public interest also favor Defendants. Plaintiffs have asked the Court to "either require both men and women to register, or require neither men nor women to register, for the MSSA." ECF No. 90 at 3, 15. The first demand—ordering the registration of women within the current scheme of the MSSA—is particularly problematic. It would impose draft registration on all eligible American women by judicial fiat before Congress has considered how to address the matter. No party before this Court represents the interests of those who would be impacted by this change. *See Smith v. Matthews*, No. G-09-152, 2010 WL 519781, at *3 (S.D. Tex. Jan. 20, 2010) (explaining that the "public interest" factor "requires the Court … [to] address the potential impact on non-parties to the underlying litigation."). Congress has the constitutional duty to "raise and support Armies." U.S. Const., Art. I, § 8, cl. 12. The

7

scope of Congress' constitutional power to decide policy in this area is broad and entitled to substantial deference. *Rostker v. Goldberg*, 453 U.S. 57, 65 (1981). It is one thing for a court to declare a statute unconstitutional and, if that ruling is upheld, to leave to Congress and military officials the judgment on how to revise the law; and quite another for a court to decide what change in policy should be adopted without any involvement by the political branches and the military. If the Court's declaratory judgment is upheld, it should be left to Congress, in consultation with the Executive Branch and military officials, to determine how to revise the registration system in response.

Plaintiffs' alternative demand—to suspend draft registration entirely—likewise would be improper. "Every Administration since 1980 has made the conscious decision to maintain national registration" as an "insurance policy" if "future threats spark requirements for forces in excess of those available to the [all-volunteer force]." ECF No. 73-1, Ex. 4, at 3. Although Congress asked the National Commission on Military, National, and Public Service to study whether a draft is still needed, *see* National Defense Authorization Act for Fiscal Year 2017, § 551(b)(1), Pub. L. No. 114-328, 130 Stat. 2000, 2130 (2016), it has yet to reach final conclusions. By enjoining the draft registration system entirely, the Court again would be unilaterally deciding the appropriate policy to comply with its declaratory judgment, at the cost of potentially compromising the country's readiness to respond to a military crisis.

Plaintiffs' arguments with respect to the balance of the equities do not respond to these concerns. First, Plaintiffs cite a passage from the Department of Defense (DoD)

report to Congress[2] summarizing the hardships that befall men who do not register for the draft. Supp. Memo. 4-5 (quoting ECF No. 73-1, Ex. 4, at 19). But the named plaintiffs *have* registered for the draft, and there is no evidence they are about to take actions that put them at imminent risk of any harm related to their draft status. Second, Plaintiffs' assert that DoD would be better served as a policy matter by registering women because "[t]he percent of individuals qualified in [highly technical] skills is unlikely to be as variable as are the combat MOSs." *Id.* at 5 (quoting ECF No. 73-1, Ex. 4, at 37). That is a mere policy argument, not a showing of hardship legally sufficient to warrant an injunction. And Congress most recently has determined that the "current focus" of draft registration remains "on mass mobilization of primarily combat troops." Pub. L. No. 114-328, § 552(b)(4), 130 Stat. at 2131. Third, Plaintiffs suggest that complying with the order would not be difficult from an administrative perspective. Supp. Memo. 6-7. Of course, the principal concerns with the injunctive relief Plaintiffs demand are rooted in the separation of powers. Nonetheless, attempts to implement any sort of new registration plan before appeal is taken, as Plaintiffs demand, *see* ECF No. 73-1, Ex. 4, at 19-20, could lead to serious logistical problems, as well as millions of dollars in

---

[2] As Defendants have previously explained, the ultimate conclusion of the DoD report to Congress was that "[i]n the absence of a comprehensive study and a broader national dialogue on the issues, DoD takes no position on whether the current national registration system and mobilization process could or should be modified." ECF No. 73-1, Ex. 4, at 36. Plaintiffs are not correct in stating that the DoD report "concluded that continuing to require only men to register would 'constrain success,'" Supp. Memo. at 6, or that it "repeatedly support[s] an end to sex discrimination on public interest grounds," *id.* at 7. Although the report discusses the positions of those who support registration of women, it does not endorse their views.

potentially wasted resources. Those steps should not be taken before Congress and the Executive Branch, in consultation with military officials, have resolved policy in this area if the Court's Final Judgment is upheld after appeals are exhausted.

As to the public interest, Plaintiffs' argument simply reiterates its merits position and policy preference for either universal registration under the MSSA as currently structured, or elimination of the draft. Supp. Memo. at 7-8. Again, that argument fails to acknowledge the serious separate of powers concerns and logistical problems inherent in ordering compliance with the Final Judgment before Defendants have had an opportunity to appeal, including the propriety of the Court either imposing on non-parties the consequences of draft registration or taking steps that would weaken the military's ability to prepare for a national security crisis. The Constitution tasks Congress and the Executive, as the politically accountable branches of government, with making these momentous decisions.

The equities are better balanced, and the public interest is better served, by the Court not mandating significant programmatic changes to draft registration before there is definitive resolution of the legal questions at issue here. The Court already adopted this sensible approach by awarding a declaratory relief only. Plaintiffs have failed to demonstrate any grounds for changing course now through the entry of injunctive relief.

## CONCLUSION

For these reasons, Plaintiffs' motion should be denied.

Dated: April 15, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI (D.C. Bar #1017949)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 305-0531
E-mail: michael.j.gerardi@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019, I electronically filed a copy of the foregoing.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael J. Gerardi*
MICHAEL J. GERARDI