# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*October 05, 2020*

David J. Bradley, Clerk of Court

No. 19-20272

United States Court of Appeals
Fifth Circuit
**FILED**
August 13, 2020

Lyle W. Cayce
Clerk

NATIONAL COALITION FOR MEN; JAMES LESMEISTER, *individually and on behalf of* OTHERS SIMILARLY SITUATED; ANTHONY DAVIS,

*Plaintiffs—Appellees,*

*versus*

SELECTIVE SERVICE SYSTEM; DONALD BENTON, AS DIRECTOR OF SELECTIVE SERVICE SYSTEM,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-3362

---

Before WIENER, STEWART, and WILLETT, *Circuit Judges.*

PER CURIAM:

Plaintiffs-Appellees James Lesmeister, Anthony Davis, and the National Coalition for Men sued Defendant-Appellants the Selective Service System and its director (collectively, "the Government") alleging that the male-only military draft is unlawful sex discrimination. The district court granted Plaintiffs-Appellees declaratory judgment, holding that requiring only men to register for the draft violated their Fifth Amendment rights.

No. 19-20272

Because that judgment directly contradicts the Supreme Court's holding in *Rostker v. Goldberg*, 453 U.S. 57, 78–79 (1981), and only the Supreme Court may revise its precedent, we REVERSE.

## I.    BACKGROUND

The Military Selective Service Act (the "Act") requires essentially all male citizens and immigrants between the ages of eighteen and twenty-six to register with the Selective Service System, a federal agency, to facilitate their conscription in the event of a military draft. 50 U.S.C. §§ 3802(a), 3809. Men who fail to register or otherwise comply with the Act and its implementing regulations may be fined, imprisoned, and/or denied federal benefits. *Id.* §§ 3328, 3811(a), 3811(f). The Act does not require women to register. *See id.* § 3802(a).

In 1980, President Carter recommended to Congress that the Act be extended to cover women. *See Rostker*, 453 U.S. at 60 (citing House Committee on Armed Services, Presidential Recommendations for Selective Service Reform—A Report to Congress Prepared Pursuant to Pub. L. 96-107, 96th Cong., 2d Sess., 20–23 (Comm. Print No. 19, 1980), App. 57–61). Congress declined after "consider[ing] the question at great length" with "extensive testimony and evidence." *Id.* at 61, 72. In 1981, the Supreme Court held in *Rostker v. Goldberg* that male-only registration did not violate the Due Process Clause of the Fifth Amendment. *Id.* at 78–79. The court based its reasoning on the fact that women were then barred from serving in combat and deferred to Congress's considered judgment about how to run the military. *See id.* at 76–77.

Since then, the military has gradually integrated women into combat roles. In the early 1990s, Congress repealed the statutory bans on women serving on combat aircraft and ships. Pub. L. No. 103-160, § 541, 107 Stat. 1547, 1659 (1993), *repealing* 10 U.S.C. § 6015 (1988) (ships), Pub. L. No. 102-

No. 19-20272

190, § 531, 105 Stat. 1290, 1365 (1991) (aircraft). In 2013, the Department of Defense ("DoD") announced its intention to open all remaining combat positions to women, the last of which it opened in 2016.

Congress again considered male-only registration in the context of the 2017 National Defense Authorization Act. The Senate version of the bill would have required women to register, S. 2943, 114th Cong. § 591 (as passed by Senate, June 21, 2016), but the final law instead created a commission to study the military Selective Service process to determine, among other questions, whether the process was needed at all and, if so, whether to conduct it "regardless of sex," National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 551, 555, 130 Stat. 2000, 2130, 2135 (2016). The commission completed its report in March 2020. NATIONAL COMMISSION ON MILITARY, NATIONAL, AND PUBLIC SERVICE, INSPIRED TO SERVE (2020), https://inspire2serve.gov/sites/default/ files/final-report/Final%20Report.pdf. The 2017 National Defense Authorization Act also directed the Secretary of Defense to issue a report addressing, *inter alia*, the benefits of the Selective Service System and the impact on those benefits of requiring women to register, which the DoD completed in 2017. *Id.* § 552, 130 Stat. at 2123.

Plaintiffs-Appellees sued the Government under 42 U.S.C. § 1983 for violations of their Fifth Amendment rights to be free from sex discrimination. On cross-motions, the district court granted summary judgment for Plaintiffs-Appellees declaring that male-only registration was unlawful, but it declined to issue an injunction. The court reasoned that *Rostker* no longer controlled because women may now serve in combat. The Government appeals, asserting that *Rostker* does control and that, regardless of *Rostker*, male-only registration is still constitutional.

3

No. 19-20272

## II.  STANDARD OF REVIEW

The facts are not in dispute, so we review de novo the district court's grant of summary judgment "to determine whether it was rendered according to law." *United States v. Jesco Const. Corp.*, 528 F.3d 372, 374 (5th Cir. 2008).

## III.  ANALYSIS

In *Rostker*, the Supreme Court held that the male-only Selective Service registration requirement did not offend due process. 453 U.S. at 78–79. The Court relied heavily on legislative history showing that Congress thoroughly considered whether to require women to register. *See id.* at 71–72, 74, 76, 81–82. Congress, and thus the Court, believed the sole purpose of registration to be the draft of combat troops in a national emergency. *Id.* at 75–76 ("Congress' determination that the need would be for combat troops if a draft took place was sufficiently supported by testimony adduced at the hearings so that the courts are not free to make their own judgment on the question."). Women were then barred from combat, so the Court examined the constitutional claim with those "combat restrictions firmly in mind." *Id.* at 77. The Court concluded, "This is not a case of Congress arbitrarily choosing to burden one of two similarly situated groups. . . . Men and women, because of the combat restrictions on women, are simply not similarly situated for purposes of a draft or registration for a draft." *Id.* at 78–79. Further, the Court rejected the district court's conclusion that women could be drafted in some number into noncombat positions without degrading the military's effectiveness, instead deferring to Congress's determination that the administrative and operational burdens of such an arrangement exceeded the utility. *Id.* at 81–82.

That holding is controlling on this court. The Fifth Circuit is a "strict stare decisis" court and "cannot ignore a decision from the Supreme Court

4

unless directed to do so by the Court itself." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012); *Hernandez v. United States*, 757 F.3d 249, 265 (5th Cir. 2014), *adhered to in part on reh'g en banc*, 785 F.3d 117 (5th Cir. 2015), *vacated and remanded sub nom. Hernandez v. Mesa*, 137 S. Ct. 2003 (2017). "[F]ollow[ing] the law as it is ... respect[s] the Supreme Court's singular role in deciding the continuing viability of its own precedents." *Perez v. Stephens*, 745 F.3d 174, 180 (5th Cir. 2014).

The Supreme Court is clear on this point as well. In *State Oil Co. v. Khan*, 522 U.S. 3, 22 (1997), the Court held that vertical maximum price fixing was not *per se* unlawful, overruling *Albrecht v. Herald Co.*, 390 U.S. 145 (1968). The Court disagreed with some of the reasoning in *Albrecht* but, relevant to this case, also found that the facts on which *Albrecht* rested had changed. *State Oil Co.*, 522 U.S. at 14–19. For example, the procompetitive potential of vertical maximum price fixing had become more evident since *Albrecht* because other business arrangements that combined with vertical maximum price fixing to help consumers were *per se* illegal at *Albrecht's* time but had since become more common. *Id.* at 14–15. Also, "the ban on maximum resale price limitations declared in *Albrecht* in the name of 'dealer freedom' ha[d] actually prompted many suppliers to integrate forward into distribution, thus eliminating the very independent trader for whom *Albrecht* professed solicitude." *Id.* at 16–17 (quoting 8 P. AREEDA, ANTITRUST LAW, ¶ 1635, p. 395 (1989)). The Court nevertheless noted that, "[d]espite ... *Albrecht's* 'infirmities, [and] its increasingly wobbly, moth-eaten foundations,' ... [t]he Court of Appeals was correct in applying that principle despite disagreement with *Albrecht*, for it is this Court's prerogative alone to overrule one of its precedents." *Id.* at 20 (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir. 1996)).

Here, as in *State Oil Co.*, the factual underpinning of the controlling Supreme Court decision has changed, but that does not grant a court of

No. 19-20272

appeals license to disregard or overrule that precedent. *See also Roper v. Simmons*, 543 U.S. 551, 594 (2005) (O'Connor, J., dissenting) (pointing out that only the Supreme Court may overrule its precedents "even where subsequent decisions or factual developments may appear to have 'significantly undermined' the rationale for [the] earlier holding" and therefore the majority should have admonished the circuit court despite affirming its judgment); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Agostini v. Felton*, 521 U.S. 203, 237, 239 (1997) (confirming rule from *Rodriguez de Quijas* that lower courts may not "conclude [that] recent cases have, by implication, overruled an earlier precedent").

Plaintiffs-Appellees point to no case in which a court of appeals has done what they ask of us, that is, to disregard a Supreme Court decision as to the constitutionality of the exact statute at issue here because some key facts implicated in the Supreme Court's decision have changed. That we will not do.

*Rostker* forecloses Plaintiffs-Appellees' claims, so the judgment of the district court is REVERSED and the case DISMISSED.